963 F.2d 1296
 William Edward DIX, Plaintiff-Appellant,
v.
The COUNTY OF SHASTA; Shasta County District Attorney's
Office; Stephen S. Carlton, Individually and as District
Attorney for the County of Shasta; Shasta County Sheriff's
Department; Sheriff Phil Eoff, Individually and in his
official capacity as the Sheriff of Shasta County;
Detective Larry Jarrett, Individually and in his official
capacity as a Deputy Sheriff for the County of Shasta; the
County of Humboldt; Humboldt County District Attorney's
Office; Terry R. Farmer, Individually and in his official
capacity as the District Attorney for Humboldt County; Kate
Green, Individually and in her official capacity as the
Director of the Humboldt County Victim Witness Program;
Alan Dale Bradley, Defendants-Appellees.
 No. 90-16441.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 7, 1991.
Decided May 8, 1992.
As Amended June 18, 1992.
 
 Bernard C. DePaoli, Eureka, Cal., for plaintiff-appellant William Edward Dix.
 James C. Pappas, John E. Hayashida, Halkides & Morgan, Redding, Cal., for defendants-appellees County of Shasta, et al.
 C. Todd Endres, Dale A. Reinholtsen, Mitchell, Dedekam & Angell, Eureka, Cal., for defendants-appellees County of Humboldt, et al.
 Appeal from the United States District Court for the Northern District of California.
 Before: FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 KOZINSKI, Circuit Judge:
 
 
 1
 Reflecting a concern for the victims of crime, the citizens of California by constitutional initiative in 1982 enacted a Victims' Bill of Rights. We consider whether they thereby gave crime victims liberty or property interests under the Due Process Clause of the Fourteenth Amendment.
 
 Facts[1]
 
 2
 Alan Bradley escaped from Oregon state prison, where he was serving time for one of his nine previous felony convictions. While a fugitive, Bradley got in a dispute with William Dix over $60 and shot Dix in the head. Bradley pled guilty to felony assault with a deadly weapon and committing great bodily injury. Judge J. Michael Brown of the Humboldt County Superior Court accepted Bradley's plea and sentenced him to seven years in prison.
 
 
 3
 Shortly after his sentencing, Bradley got in touch with officials in the Shasta County District Attorney's Office and offered them information concerning a murder investigation in an unrelated case. Subsequently, Shasta County District Attorney Stephen Carlton, Humboldt County District Attorney Terry Farmer, and Larry Jarrett of the Shasta County Sheriff's Department (all of whom are defendants in this case) met with Judge Brown in his chambers in Humboldt County. After this meeting, Judge Brown recalled Bradley's sentence pursuant to section 1170(d) of the California Penal Code,[2] and Bradley was moved to a Shasta County jail. A few months later, Carlton, Farmer and Jarrett again met with Judge Brown; after this meeting, Judge Brown released Bradley. Bradley's total time in prison, from the date of sentencing to the date of release, was eight months and fourteen days.
 
 
 4
 The California Victims' Bill of Rights imposed an obligation on prosecutors not to plea bargain with Bradley. Cal.Penal Code § 1192.7(a). The Bill also required that the Humboldt and Shasta County probation departments notify Dix of Bradley's various sentencing proceedings.[3] Cal.Penal Code § 1191.1. It also obligated Judge Brown "in imposing sentence [to] consider the statements of victims." Id. Despite these crystal-clear commands, prosecutors persuaded Judge Brown to diminish Bradley's sentence in exchange for his cooperation, actions which Dix claims amount to a plea bargain. The county probation departments failed to notify Dix about Bradley's sentencing, or about Bradley's recall and release. And Judge Brown sentenced Bradley and then recalled Bradley's sentence without hearing from Dix.
 
 
 5
 When Dix eventually found out about the meager prison term served by the man who had shot him in the head, he wasn't at all pleased. He first wrote Judge Brown, referring to the numerous criminal convictions Bradley had accumulated and expressing his concern about Bradley's release. The letter being to no avail, Dix turned to the courts. In the California state courts, Dix tried to secure Bradley's re-incarceration, but the California Supreme Court turned down that effort. Dix v. Superior Court, 53 Cal.3d 442, 279 Cal.Rptr. 834, 838, 807 P.2d 1063, 1067 (1991). The court held that under California law the prosecutor has the sole authority to determine how to proceed in criminal prosecutions, and the judge the sole authority to sentence. Id. 279 Cal.Rptr. at 837-38, 842-43, 807 P.2d at 1066-67, 1071-72.
 
 
 6
 Dix also brought this federal civil rights lawsuit under 42 U.S.C. § 1983, claiming that the two California counties and various state and local officials violated his federal constitutional rights by failing to discharge their responsibilities under the Victims' Bill of Rights. The district court dismissed Dix's complaint and Dix appeals.
 
 Discussion
 
 7
 * Dix first argues that crime victims have a liberty interest, derived directly from the Due Process Clause, in the incarceration of criminals. To be sure, the Supreme Court has recently held that states may permit sentencing authorities to consider the crime's impact on the victim. See Payne v. Tennessee, --- U.S. ----, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). But Dix claims something far different--that states are constitutionally required to give crime victims the right to become involved in the prosecution and sentencing of a criminal defendant. This is an unsupportable claim. There is no history, tradition or precedent suggesting that the liberty component of the Due Process Clause encompasses such a right.
 
 II
 
 8
 Dix's more serious contention is that California's Victims' Bill of Rights grants crime victims an interest palpable enough to be enforced by the federal courts as a matter of due process.
 
 
 9
 A. It is, of course, well established that state law can create liberty interests triggering federally enforceable procedural rights. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). To do so, a state law must contain two elements. First, the law must contain "substantive predicates" governing an official's decision regarding a matter directly related to the individual. Id. at 462, 109 S.Ct. at 1909. This means that the law in question must provide more than merely procedure; it must protect some substantive end. The state "may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) (footnote omitted). Second, the state law must employ "explicitly mandatory language" specifying the outcome that must be reached upon a finding that the substantive predicates have been met. Thompson, 490 U.S. at 463, 109 S.Ct. at 1910.
 
 
 10
 These requirements are perhaps easier to illustrate than to describe in the abstract. A prison regulation requiring that a prison administrator, prior to transferring an inmate, hold an adversary hearing before an impartial tribunal does not give inmates a liberty interest: The regulation does not specify any substantive predicates governing the administrator's or tribunal's decision. Olim, 461 U.S. at 249-50, 103 S.Ct. at 1747-48. A prison regulation providing that an inmate's visitor "may be excluded" or "may be admitted" if certain substantive predicates are met does not contain sufficiently mandatory language to create a liberty interest. "Visitors may be excluded if they fall within one of the described categories, but they need not be. Nor need visitors fall within one of the described categories in order to be excluded." Thompson, 490 U.S. at 464, 109 S.Ct. at 1911 (internal citation omitted). Such a regulation "stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met" and thus "do[es] not establish a liberty interest." Id. at 464-65, 109 S.Ct. at 1910-11. On the other hand, a prison regulation providing that an inmate "must be allowed to receive visitors" if he exhibits good behavior gives inmates a liberty interest in receiving visitors. Such a law contains a substantive predicate--good behavior--and if the substantive predicate is met, the prison must admit the inmate's visitors.
 
 
 11
 B. Dix contends that a variety of provisions of California law give him a liberty interest under the Due Process Clause, but none in fact do so.
 
 
 12
 Four of the provisions Dix cites are unavailing because the substantive predicates they contain have nothing whatsoever to do with crime victims. Penal Code section 1192.7(a) precludes prosecutors from plea bargaining in certain categories of cases.[4] Government Code section 26540 prohibits prosecutors from assisting defendants in defense of their criminal cases.[5] Penal Code section 1191.1 in part requires that the judge consider whether the criminal would "pose a threat to public safety" before granting probation.[6] And Article I, section 28(e) of the California Constitution similarly requires that the judge or magistrate consider public safety before releasing an accused on bail or on his own recognizance.[7] None of these provisions requires that the relevant state official consider a factor related to the victim before making the decision; as such, none gives crime victims a liberty interest.
 
 
 13
 A different part of section 1191.1 guarantees crime victims the right to receive notice and appear at all sentencing proceedings of the person who committed the crime.[8] This provision gives crime victims procedural rights, but this is not enough: The purpose of the Due Process Clause is "to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim, 461 U.S. at 250, 103 S.Ct. at 1748. Thus, "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." Id. at 250 n. 12, 103 S.Ct. at 1748 n. 12; see also Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) ("mere fact that Pennsylvania has created a careful procedural structure to regulate the use of administrative segregation [does not indicate] the existence of a protected liberty interest"). No liberty interest is created here because the state law provides only that victims have a right to be present, it does not specify how that presence must affect the sentencing proceedings.
 
 
 14
 Another portion of section 1191.1 does contain a substantive predicate related to crime victims but fails to dictate an outcome if the predicate is met. It states that the judge "in imposing sentence shall consider the statements of victims."[9] It requires no particular result based on what's said, however; it thus differs from a statute that might provide: "If the judge finds that the effect on the victim has been severe or that the victim favors the maximum possible sentence, the judge must enhance the defendant's sentence by at least one year."[10] This hypothetical statute would give victims a liberty interest because it would mandate a result based on a finding about the victim. See Thompson, 490 U.S. at 464-65, 109 S.Ct. at 1910-11.
 
 
 15
 In sum, none of the provisions of California law at issue here[11] gives crime victims a liberty interest enforceable under the Due Process Clause.
 
 III
 
 16
 Dix claims that section 13835.2 of the Penal Code gives crime victims a federally enforceable property interest. But section 13835.2 merely allocates monetary aid to nonprofit agencies that assist crime victims. Nothing in it requires that the state give victims money or aid; the law thus fails to create the "entitlement" necessary to constitute a property interest under the Due Process Clause. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970).
 
 IV
 
 17
 Finally, Dix contends that defendants infringed his First and Sixth Amendment rights when they failed to notify him of Bradley's sentencing proceedings. These claims are frivolous. The First Amendment protects individuals from government infringement of their speech; it does not require the government to notify those individuals who might find it beneficial to appear or speak at a particular government proceeding. The Sixth Amendment similarly does not impose affirmative obligations on the government to inform potentially interested persons of court proceedings they might wish to attend.
 
 Conclusion
 
 18
 California's Victims' Bill of Rights gives crime victims important procedural rights in participating in the punishment of those who have victimized them. For reasons that are unclear on this record, the state officials involved in Bradley's sentencing--the District Attorneys of Humboldt and Shasta County, the Probation Departments of Humboldt and Shasta County, the Superior Court judge who sentenced and then released Bradley--paid no heed to Dix's rights. While this is doubtless frustrating to Dix, his remedy, if any, lies in the state courts or through the political process. The Victims' Bill of Rights does not give crime victims a liberty or property interest enforceable under the Due Process Clause. Although Dix may have a legitimate grievance against the state officials involved in Bradley's sentencing and release, he has no federal cause of action.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 We accept as true the allegations in Dix's complaint, as we must in an appeal from dismissal under Fed.R.Civ.P. 12(b)(6). Defendants have not contested Dix's version of the salient facts, either here or in the state courts. Instead, defendants have disputed the legal significance of those facts
 
 
 [2]
 Section 1170(d) provides in relevant part:
 When a defendant ... has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, ... recall the sentence ... and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence.
 
 
 [3]
 The initiative measure designated Proposition 8 and commonly known as "The Victims' Bill of Rights" was adopted by the voters of California in June 1982. It "accomplish[ed] several changes in the criminal justice system in [California] for the purpose of protecting or promoting the rights of victims of crime." Brosnahan v. Brown, 32 Cal.3d 236, 186 Cal.Rptr. 30, 33, 651 P.2d 274, 277 (1982). Proponents of the measure had noted that "[f]or too long our courts and the professional politicians in Sacramento have demonstrated more concern with the rights of criminals than with the rights of innocent victims." Statement of Lieutenant Governor Mike Curb in Favor of Proposition 8, quoted in Brosnahan, 186 Cal.Rptr. at 75, 651 P.2d at 319 (appendix)
 This effort in California was symptomatic of a broader recognition of victims' rights in the criminal justice system. For example, in 1982, the President's Task Force on Victims of Crime stated: "The victim, no less than the defendant, comes to court seeking justice.... It is outrageous that the system should contend it is too busy to hear from the victim." President's Task Force on Victims of Crime, Final Report 77 (Dec.1982). At about the same time, a noted criminal law scholar stated, "[T]he victim deserves a voice in our criminal justice system ... [and] should have a right to participate in hearings before the court on dismissals, guilty pleas, and sentences." Abraham S. Goldstein, Defining the Role of the Victim in Criminal Prosecution, 52 Miss.L.J. 515, 547 (1982).
 
 
 [4]
 Section 1192.7(a) states:
 Plea bargaining in any case in which the indictment or information charges any serious felony, any felony in which it is alleged that a firearm was personally used by the defendant, or any offense of driving while under the influence of alcohol, drugs, narcotics, or any other intoxicating substance, or any combination thereof, is prohibited, unless there is insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence.
 
 
 [5]
 Section 26540 provides: "A district attorney shall not during his incumbency defend or assist in the defense of, or act as counsel for, any person accused of any crime in any county."
 
 
 [6]
 Section 1191.1 provides in part: "The court in imposing sentence ... shall state on the record its conclusion concerning whether the person would pose a threat to public safety if granted probation." Judge Brown never did this before releasing Bradley, yet Bradley's release was the functional equivalent of probation
 
 
 [7]
 Article I, section 28(e), provides in part:
 A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her at the trial or hearing of the case. Public safety shall be the primary consideration.
 A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail. However, no person charged with the commission of any serious felony shall be released on his or her own recognizance.
 
 
 [8]
 Section 1191.1 provides in part:
 The victim of any crime, or his or her parent or guardian if the victim is a minor, or the next of kin of the victim if the victim has died, has the right to attend all sentencing proceedings under this chapter and shall be given adequate notice by the probation officer of all sentencing proceedings concerning the person who committed the crime.
 
 
 [9]
 Section 1191.1 provides in part: "The court in imposing sentence shall consider the statements of victims, parents, or guardians, and next of kin made pursuant to this section." Judge Brown did not do this, either at Bradley's initial sentencing or when he subsequently freed Bradley
 
 
 [10]
 Of course, any time a defendant's sentence must vary depending on the views of a victim, there is a question whether the defendant's due process rights are violated. See Payne, 111 S.Ct. at 2614 n. 1 (Souter, J., concurring). We obviously express no view on this issue
 
 
 [11]
 Dix also points to Penal Code section 3043, which requires that the parole board hear from the victim and consider the victim's views before granting parole. Bradley never came before the parole board in this case, so this provision does not advance Dix's cause. In any event, section 3043 does not require a particular outcome based on the victim's views, and thus does not give crime victims a liberty interest