Eric SCHROEDER, Plaintiff,

v.

Pete McDONALD, et al., Defendants.

Civ. No. 91–00111 DAE.

United States District Court,
D. Hawaii.

Dec. 3, 1992.

Eric Schroeder, pro se.

Susan Barr, State Atty. Gen., Robert A. Marks, Atty. Gen. of HI, Dept. of Atty. Gen., Honolulu, HI, for defendants Pete McDonald, Branch Adm'r, Susan Segawa and Ron Mico, Social Workers, George W. Sumner, DPS Director, Roland Leong, Prison Guard and Deanna Espinas, DPS Librarian.

DAVID ALAN EZRA, District Judge.

ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION OF MAGISTRATE GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S APPEAL FROM MAGISTRATE'S ORDER DENYING PLAINTIFF'S MOTION TO DEFER; DENYING PLAINTIFF'S APPEAL FROM MAGISTRATE'S ORDER GRANTING DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY; AND GRANTING DEFENDANTS' MOTION TO CORRECT CLERICAL ERRORS

Plaintiff brings these appeals from three orders of the magistrate judges. On August 31, 1992, Magistrate Judge Yamashita issued an order granting defendants' motion for protective order and denying plaintiff's motion to compel discovery. On the same day, Magistrate Judge Yamashita issued an order denying plaintiff's motion to defer ruling on defendants' summary judgment motion. On September 15, 1992, Magistrate Judge Kurren issued findings and recommendation that defendants' motion for summary judgment be granted. Plaintiff appeals from each of those rulings.

Additionally, defendants move that this court reconsider its order of October 2, 1992, granting plaintiff's ex parte motion to enlarge time.

After reviewing plaintiff's objections and defendants' response to plaintiff's objections, the court adopts in part and modifies in part the report and recommendation of the magistrate judge, grants in part and denies in part defendants' motion for summary judgment, denies plaintiff's appeal from the magistrate's order denying plaintiff's motion to defer, denies plaintiff's appeal from the magistrate's order granting defendants' motion for protective order and denying plaintiff's motion to compel discovery, and grants defendants' motion for reconsideration which the court treats as a motion to correct clerical errors.

## BACKGROUND

On February 22, 1991, plaintiff Eric Schroeder, an inmate now at Oahu Community Correctional Center (OCCC), acting pro se and *in forma pauperis*, filed § 1983 and § 1985 civil rights complaints for violation of the First, Eighth, and Fourteenth Amendments to the Constitution against defendants in their official and/or personal capacities. Plaintiff demands a jury trial and seeks declaratory, compensatory, punitive, and equitable relief, and costs.

Plaintiff sues defendants Pete McDonald, Branch Administrator of Kulani Correctional Facility (KCF), and George Sumner, Director of the Department of Public Safety, in their official and personal capacities. Plaintiff sues defendants Susan Segawa and Roxi Mico, KCF social workers, defendant Deanna Espinas, DPS librarian, and defendant Roland Leong, adult correctional officer at KCF and Halawa, in their personal capacities.

For purposes of this motion only the court sets forth the following facts as *alleged* by Schroeder in his complaint.

On December 4, 1990, Schroeder, an inmate at the Halawa Correctional Facility, was transferred to the Kauai Community Correctional Center (KCCC) for a two-week period prior to a proposed permanent transfer to the Kulani Correctional Facility (KCF), a small, minimum security work camp located on the Island of Hawaii.

Schroeder alleges that the KCCC law library is inadequate. Most significantly, he alleges that the library is unreasonably small, does not have important legal volumes, including Hawaii state laws and current correctional policy rules manual, and that the library aides fail to provide necessary legal assistance. Additionally, Schroeder alleges that the KCCC library has dozens of unopened boxes containing legal documents including advance sheets, recent Federal Reporter supplements and Supreme Court Reporter volumes.

On December 18, 1990, Schroeder was transferred from the KCCC to the KCF. Schroeder was assigned a custody classification level of "out" and a graded pay level of 25 cents an hour.

Schroeder was assigned to unit team 1. His job duties included hauling trash, chopping wood and cutting grass. On December 3, 1991, Defendant Leong was assigned to supervise Schroeder's work crew for the day.

Schroeder alleges a history of mistreatment by Leong during the time Leong was a prison guard at HCF and Schroeder was a prisoner there.

Specifically, Schroeder alleges that Leong cited him for prison rule violations on the basis of false information, and that Leong referred to Schroeder, who claims to hold a sincere belief in the Jewish faith, by using anti-Semitic terms. Schroeder has filed several administrative grievances against Leong in the past as well as civil rights action in federal court, *Schroeder v. Leong, et al.*, Civil No. 90–00112 District of Hawaii.

On December 3, 1991, Schroeder's work group was assigned to the KCF pig farm. Schroeder was assigned to cut grass around an area known as the pit, a collecting area for pig excrement. According to Schroeder, less than ten minutes after he began cutting grass, Leong began to holler at him, expressing displeasure with Schroeder's manner of work. Schroeder claims that Leong yelled at him several times and that each time he made an effort to comply with Leong's instructions. Schroeder also alleges that throughout this incident Leong consistently mispronounced his name and repeatedly taunted Schroeder with the question, "Are you related to Schroeder the quarterback?"

Finally, Leong expressed dissatisfaction with Schroeder's method of stacking the cut grass and told Schroeder that he would be cited for refusing to obey an order. Schroeder asked Leong to call over one of his supervising officers. Leong allegedly responded, "No Jew boy you are going to work in that pig shit before you go anywhere." Leong refused to call over a supervising officer and Schroeder subsequently refused to continue working at his tasks. Schroeder

dropped his tools and began walking back to the truck disobeying Leong's order to pick up the sickle that Schroeder had dropped.

At that point, Schroeder alleges, Leong said, "Well Jew boy back to Halawa you go." Leong subsequently cited Schroeder for several prison rule violations including the threat of use of force against a correctional officer, impairment of the performance of a correctional function by a prison official, refusal to obey an order of any prison staff member, failing to perform work as instructed by a staff member, using equipment in violation of posted safety standards, and harassment of a prison employee. The first two of the charges, as well as the charge for misuse of equipment, were subsequently dismissed by a KCF investigator.

On January 11, 1991, Defendant Segawa allegedly confronted Schroeder to ask why he had complained about the conditions at KCF. Earlier that month, in a letter to Defendant MacDonald dated January 1, 1991, Schroeder complained to MacDonald, the Branch Administrator of KCF, that KCF was in violation of several state and federal laws regarding the infrastructure and maintenance of prisons.

Schroeder refused to discuss the matter with Segawa and said that he would only discuss his complaints with the Branch Administrator, MacDonald. Segawa allegedly stated, "I think it was a mistake to bring you to Kulani." Only two minutes later Segawa allegedly returned to Schroeder who was then being held in isolation at the time, and told him that he was being cited for lying because parts of his January 1 letter were untrue. Two hours later Schroeder was allegedly notified by a prison official that all of the charges previously dismissed against him were being reinstated. An adjustment committee hearing was held on December 14, 1991, for which Schroeder alleges insufficient notice and counsel in violation of prison regulation Section 17–201–16 and Section 17–201–17(g).

The adjustment committee found Schroeder guilty of two counts of refusing to obey an order of any staff member (Section 17–201–8(a)(11)), failing to perform work as instructed by a staff member (Section 17–201–

8(a)(14)), and improper use of equipment (Section 17–201–8(a)(21)). During the hearing, Schroeder's kosher dietary habits were discussed. Terrill Harrison, the chairman of the adjustment committee, allegedly stated, "An inmate like that can't stay here at Kulani." The adjustment committee recommended that a classification review be held on Schroeder's status. Prior to the adjustment committee hearing, Schroeder was allegedly told by a KCF official on January 9 that a misconduct would be issued for a violation of legal assistance to two inmates.

On January 13 Schroeder mailed a letter to all United States District Court Judges for the District of Hawaii asking for injunctive relief to permit him court access while at KCF.

Schroeder alleges that on January 17, 1991 John Robelido, Chief of KCF security, told Schroeder, "Before you go making any court complaints about KCF you talk with me first—I'll work it out just be reasonable. We are a small facility."

Over the next two weeks Schroeder made several complaints. Schroeder filed a complaint with the Office of the Ombudsman that KCF provide inmates being held in isolation with recreation. Schroeder filed a complaint that nighttime temperature in the cell was too low. Schroeder alleges that he was provided insufficient access to his legal materials during the time he was in isolation. He was not permitted to leave his materials in his cell, but was instead required to submit written requests for access. Access was not allowed on weekends and holidays.

Schroeder alleges that the KCF law library is inadequate, lacking many important legal volumes. Additionally, he says 75 percent of KCF's volumes are on microfiche. Schroeder also alleges that the physical aspects of the library are inadequate. Specifically, he says the library, approximately 12 feet long and 11 feet wide, is too small and is inadequately heated. Schroeder contends that the combined effect of the inadequacies of the KCF library was to prejudice him in the prosecution of his seven pending federal civil actions and various state and federal agency actions.

On January 29, 1991, a review of Schroeder's classification was held. Defendants Mico, MacDonald, and Segawa sought to change Schroeder's "out" security classification to "in." Mico, MacDonald and Segawa cited the following reasons for changing Schroeder's status and transferring him from KCF.

In addition to the five misconducts (incidents; 8 charges) incurred after just 16 days at KCF, you pose a management problem for the facility, i.e., our conscientious effort to accommodate all of your legal requests and needs have strapped our staffing situation, as well as negatively impacted upon the rest of the KCF inmate population.

As a result of that review, Schroeder's classification status was changed to "in."

Schroeder alleges that that change in classification status violates inmate policy No. 493.18.03 which permits changes in classification status only for misconduct above the moderate level. Schroeder states that each of the misconducts for which he was found culpable by the adjustment committee were of moderate and low moderate levels. Schroeder alleges that he has only 9 custody points and that 21 points are required for a custody level increase.

Furthermore, Schroeder alleges a history by defendants of transferring from KCF any inmates who make complaints against KCF or its staff, and that he was treated differentially with respect to other inmates who had committed more serious misconducts and did not receive equal penalties.

Schroeder sets forth eleven causes of action.

1. Leong harassed and retaliated against him as a result of his commencement of a civil rights suit against Leong, and that Leong's actions violated his First and Fourteenth Amendment rights under the United States Constitution.

2. Espinas' gross omission to establish law libraries at KCCC and KCF violated his First and Fourteenth Amendment rights to practice jail house lawyering.

3. Espinas' gross omission to establish an adequate library and access library programs

at KCF was a substantial cause in defendants Mico and Segawa's motion to transfer plaintiff to Halawa thus abridging his First and Fourteenth Amendment rights.

4. Mico, Segawa and MacDonald reclassified and transferred plaintiff in retaliation for his exercise of his constitutional rights.

5. Mico, Segawa, MacDonald, Espinas and Leong violated his Fourteenth Amendment rights by acting in contravention of prison policy No. 493.12.02 which establishes that prisoners shall not be penalized for seeking access to courts or legal service and that defendants shall assist prisoners in gaining such access to courts.

6. Sumner's review and approval of Schroeder's retaliatory reclassification and transfer was a substantial cause in the constitutional harm caused Schroeder.

7. The actions of Segawa, Mico and MacDonald in assigning Schroeder to the orientation work crew contravened prison policy No. 17–201.5(a)(18) which establishes that prisoners shall be allowed to participate in employment in keeping with the interests, needs and abilities and thus violated Schroeder's Fourteenth Amendment rights.

8. Leong's intentional and sadistic harassment of Schroeder furthered no legitimate penological interest and thus violated Schroeder's Eighth and Fourteenth amendment rights.

9. Sumner, Segawa, Mico and MacDonald violated Schroeder's Fourteenth Amendment rights by reclassifying him in violation of established prison policy to assign inmates to the least constructive confinement that adequately addresses the level of risk an inmate represents to the facility and to the community at large.

10. Defendants' reclassification and transfer of Schroeder in retaliation for his exercise of his First Amendment rights violated Schroeder's First and Fourteenth Amendment rights.

11. Schroeder states as a pendent state claim that defendants' actions proximately caused the emotional and mental trauma that he suffered and continues to suffer subsequent to his transfer.

## STANDARD OF REVIEW

Under Fed.R.Civ.P. 72(a) and Local Rule 404–1, the district court reviews the non-dispositive rulings of a magistrate judge for clear error and makes a *de novo* review of any dispositive rulings.

Accordingly, the court reviews the magistrate's denial of plaintiff's motion to defer and the magistrate's order denying plaintiff's motion to compel discovery and granting defendant's motion for protective order under the clearly erroneous standard.

The findings and recommendation of Magistrate Judge Kurren recommending that summary judgment be entered in favor of defendants is reviewed *de novo*.

## DISCUSSION

### I. Plaintiff's Motion to Defer

The magistrate properly denied plaintiff's motion to defer.

Rule 56(f) provides that the court may order a continuance to permit affidavits to be obtained should it appear that the party opposing a motion for summary judgment cannot for reasons stated present by affidavit facts essential to justify the party's opposition.

Schroeder states that he does not have access to certain witnesses to develop affidavits essential to raise genuine issues of material fact in support of his opposition to defendants' motion for summary judgment. Specifically, Schroeder claims that he needs the testimony of inmates David Elber, David Kraul, Ray Tashibana, and Donald Killian. Schroeder proffers that Elber and Kraul would testify to show a pattern of past wrongs and to show that prison officials knew of defendant Leong's past pattern of abusing prisoners. Schroeder says that Killian would testify to KCF's practice of transferring inmates who litigate their grievances and that Tashibana would testify to the condition of the law library at KCCC.

The magistrate judge denied the motion to defer on the basis that Elber and Kraul's testimony was inadmissible under Federal Rules of Evidence 403 and 404, and that

Tashibana and Killian's testimony was inadmissible since it concerned conditions that existed at KCCC and KCF prior to Schroeder's stay at those facilities.

■ Federal Rule of Evidence 404 prohibits the admission of any evidence of crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith except to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Accordingly, the testimony of Elber and Kraul regarding Leong's alleged prior bad acts is inadmissible. Killian's testimony is similarly inadmissible.

■ The motion was also properly denied with respect to Tashibana. Though Tashibana's testimony may have been admissible even though he was housed at KCCC prior to Schroeder, no significant factual dispute exists here concerning the contents of the KCCC library. The sole issue concerning the KCCC library is the legal question of whether the library was constitutionally adequate. Thus, Tashibana's testimony was not essential within the definition of Rule 56(f).

The magistrate's ruling was correct in all respects. Plaintiff's motion to defer was properly denied.

II. *Defendants' Motion for Protective Order and Plaintiff's Motion to Compel Discovery*

The magistrate properly granted defendants' motion for protective order and properly denied plaintiff's motion to compel discovery.

The magistrate concluded that defendants had substantially complied with plaintiff's discovery requests. Furthermore, the magistrate noted that further discovery should not be ordered where a defendant has raised the affirmative defense of qualified immunity.

"Once a defendant pleads a defense of qualified immunity, [o]n summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. ... Until this threshold immunity question is resolved, discovery should not be allowed." *Siegert v. Gilley,* — U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 286 (1991), quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

In this way, the courts may filter out suits in which a defendant properly pleads the defense of qualified immunity so as to save the defendant the expense of engaging in costly preparation for a trial on the merits. *Siegert,* — U.S. at ——, 111 S.Ct. at 1793, 114 L.Ed.2d at 287.

■ Schroeder correctly notes, however, that while qualified immunity is an affirmative defense to damage liability, it does not bar actions for declaratory or injunctive relief. *Presbyterian Church v. United States,* 870 F.2d 518, 527 (9th Cir.1989) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982)). Accordingly, Schroeder states that he should have been allowed discovery with respect to his claims for restoration of his custody level and back pay for work at the KCF.

Specifically, Schroeder contends that defendants have failed to provide job description statements of their own jobs, KCF's court access plan, and Leong's 1990, 1991, and 1992 employee evaluations. None of these, documents, however, relate to Schroeder's claims for equitable or injunctive relief. The KCF court access plan is relevant solely to Schroeder's second and third causes of action, neither of which state a claim for equitable relief. Both claims are brought against Espinas in her individual capacity. The job description statements and Leong's employee evaluations are relevant solely to Schroeder's retaliation claims.

The remainder of plaintiff's discovery requests related to a matter to which defendants had pleaded the affirmative defense of qualified immunity and were entitled to a protective order staying further discovery.

Accordingly, the ruling of the magistrate was not in error. The magistrate properly denied plaintiff's motion to compel discovery and properly granted defendants' motion for protective order.

**III.** *Defendant's Motion to Correct Clerical Error*

In a statement of no opposition to one of plaintiff's several motions for extensions of time for filing objections to the magistrate's report and recommendation filed October 7, 1992, defendants moved this court to reconsider its order of October 2, 1992, granting plaintiff's ex parte motion to enlarge time. The court treats defendants' motion for reconsideration as a motion to correct clerical errors under Fed.R.Civ.P. 60(a).

Specifically, defendants objected to the court's inclusion of the sentence, "Plaintiff is temporarily without access to his files and the prison law library." Defendants' objection was proper. That sentence was based on an ex parte representation by the plaintiff and was inadvertently included in the order. Accordingly, defendants' motion is granted and the contested sentence is struck from the October 7 order.

**IV.** *Defendant's Motion for Summary Judgment*

**A. Summary Judgment Standard**

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

... the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the nonmoving party will bear the burden of

proof at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *but cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

■ If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleading, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Architectural Building Products, Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

■ However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.*, 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the nonmoving

party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the judge is required to resolve in favor of the nonmoving party. *Id.*

**B. Absolute Immunity Standard**

■ The Eleventh Amendment bars a suit against state officials in their official capacity if the state is the real party in interest. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). *See also, Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir.1984).

**C. Qualified Immunity Standard**

■ An assertion of the affirmative defense of qualified immunity presents the legal question of whether a public official is entitled not to be forced to stand trial for actions taken in her official capacity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 n. 9, 105 S.Ct. 2806, 2817 n. 9, 86 L.Ed.2d 411.

■ Public officials are entitled to qualified immunity from damages for any conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738. This protection is quite broad. Under the *Harlow* test, a public official is only not entitled to qualified immunity if the right violated is clearly established.

■ The policy rationale behind this test is two-fold. First, as an element of fairness, public officials can only be expected to conform their behavior to standards that are well defined. In *Todd v. United States*, 849 F.2d 365, 368 (9th Cir.1988), the Ninth Circuit said:

> If the controlling law is not clearly established, a reasonable person would not be expected to know how to structure his conduct in order to avoid liability. *Id.* at 368–69.

Second, the public interest is served having officials who are able to take affirmative action without persistent fear of suit. Qualified immunity acts as a means to avoid deterring capable persons from accepting public office and encouraging action on pressing social issues. *Harlow*, 457 U.S. at 814, 102 S.Ct. at 2736.

**D. Schroeder's Eleven Causes of Action**

**1. *First and Eighth Causes of Action: Claims Against Leong***

Schroeder's first and eighth causes of action concern his alleged mistreatment by Leong and Leong's alleged retaliation against Schroeder for Schroeder's prior filing of a federal lawsuit against Leong.

Schroeder's eighth cause of action alleges that Leong's intentional and sadistic harassment of Schroeder violated his Eighth and Fourteenth Amendment rights. The magistrate correctly concluded that summary judgment was appropriate on this claim.

To state a valid claim under the Eighth Amendment, the alleged conduct must rise to a level that "shocks the conscience." *McFadden v. Lucas*, 713 F.2d 143, 147 (5th Cir.1983) (citing *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952)). Furthermore, "verbal harassment or abuse ... is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987).

■ Schroeder alleges that on one occasion Leong kicked open Schroeder's cell door and temporarily blinded him by shining a flashlight in his face. This conduct clearly does not legally rise to a level that shocks the conscience. Schroeder additionally alleges that Leong repeatedly referred to him in anti-Semitic terms. Though reprehensible if true, Leong's conduct does not rise to a level that violates the protections of the Eighth Amendment. Accordingly, summary judgment in favor of defendant is appropriate on plaintiff's eighth cause of action.

■ In his first cause of action, Schroeder alleges that Leong harassed and retaliated against him for his prior commencement of a civil rights suit against Leong. The magistrate erred in his conclusion that Schroeder has failed to set forth a valid claim for retaliation under 42 U.S.C. § 1983. To state a valid claim for retaliation under

§ 1983, a plaintiff must allege both "that the type of activity he engaged in was protected under the First Amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir.1985).

Because "the associational rights of prisoners 'may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations ... possess the likelihood of disruption of prison order or stability,'" *Id.* at 532 (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629), inmates bringing § 1983 claims must additionally allege that "the prison authority's retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Id.* *See also Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir.1984).

The court finds that Schroeder has met each of these requirements in his claims for retaliation against Leong. First, the court finds that Schroeder's activity in filing litigation against Leong, among others, is protected by the First Amendment. "Prisoners, despite their conviction and confinement, do not forfeit all constitutional rights." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir.1990) (citing *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). "Prison walls do not form a barrier separating prison inmates from the protection of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987).

■■■ As a general proposition prisoners retain those rights which are not otherwise restricted by those matters in which the prison has a legitimate penological interest. *See, e.g., Procunier v. Martinez*, 416 U.S. 396, 413–14, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974). Furthermore, prisoners have a specifically protected First Amendment interest in pursuing civil rights litigation. *See, e.g. Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir.1985). ("In this case the plaintiff stated that he was assisting other inmates with their habeas petitions, that he encouraged and offered to help his fellow students in the

vocational course in legal matters, *and that he was pursuing legal actions of his own.* These allegations adequately state that plaintiff was participating in activities similar to those in *Button* and *Owens*, which thus are protected by the First Amendment." (Emphasis added) (citing *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) and *Owens v. Rush*, 654 F.2d 1370 (10th Cir.1981)).

Schroeder's claim also alleges the required elements of impermissible infringement not reasonably related to the advancement of legitimate penological goals. Schroeder specifically alleges that Leong filed disciplinary charges against him, several of which were found baseless by the prison administrators themselves, and that Leong harassed him, in retaliation for his prior filing of a civil rights complaint against Leong.

■■■ While a plaintiff in a § 1983 retaliation claim must allege that the action taken against him was taken in retaliation for the exercise of a constitutionally protected interest, the plaintiff need not allege that the resulting damage affected a constitutionally protected interest. The sole question is whether the action in question was taken in retaliation for the exercise of an inmate's constitutional rights. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) ("A claim for relief may be stated under section 1983 if otherwise routine decisions are made in retaliation for the exercise of constitutionally protected rights.")

Thus, the fact that Schroeder neither has a right under the Eighth Amendment to be free from the sort of harassment Leong has allegedly subjected him to, nor a right under the Fourteenth Amendment to be housed in the correctional facility of his choice as noted below, has any impact on Schroeder's claim for retaliation.

■■■ Here, Schroeder has alleged with considerable specificity a claim of retaliation by Leong and has alleged resulting injuries that he says would not have occurred but for the exercise of his constitutionally protected rights. As such, Schroeder has made out a valid claim for retaliation under § 1983. Furthermore, since the law on retaliation

under § 1983 is well established, Leong is not protected by the defense of qualified immunity.

Accordingly, summary judgment on Schroeder's first claim is inappropriate.

2. *Fourth, sixth, and tenth causes of action: retaliation claims against Segawa, Mico, MacDonald, and Sumner*

In his fourth, sixth, and tenth causes of actions, Schroeder alleges that defendants transferred him from KCF to Halawa in retaliation for his exercise of constitutional rights.

As noted above, a claim for retaliation need not set forth an injury to a constitutionally protected interest, it need only establish that a prison official acted on the basis of an impermissible motive. Thus, "[w]hile a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have discretion to punish an inmate for exercising his First Amendment rights by transferring him to a different institution." *Frazier v. DuBois*, 922 F.2d 560, 561 (10th Cir.1990); *See also Meriwether v. Coughlin*, 879 F.2d 1037, 1045 (2d Cir.1989); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir.1985); and *Buise v. Hudkins*, 584 F.2d 223, 229–30 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). *Cf. Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir.1989); *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir.1984); *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir.1981); and *Furtado v. Bishop*, 604 F.2d 80, 87 (1st Cir.1979), *cert. denied*, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).

■ The magistrate erred in its conclusion that Schroeder has failed to set forth a valid claim of retaliation. Schroeder alleges that he was transferred in response to his filing of the January 1 complaint against MacDonald, and for the various complaints against prison officials that he wrote in the subsequent two weeks. He also alleges several statements were made to him that, if true, might constitute admissions of retaliation. Taken together, these allegations are sufficient to set forth a basic claim for retaliation.

Defendants contend that Schroeder backdated the January 1 letter and consequently cannot establish a plausible chain of events from which chronology can be inferred. *See Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988). That, however, is a question of fact from which any inference must be drawn in Schroeder's favor.

■ Schroeder's claim has not, however, set forth sufficient facts to set forth a claim against defendant Sumner. As noted above, a plaintiff claiming retaliation must set forth a chronology of events from which retaliation may plausibly be inferred. *Id.* Schroeder has not demonstrated that Sumner had any significant involvement in his transfer. Schroeder has also failed to demonstrate any plausible basis on the record for Sumner to retaliate against him. While Schroeder has established some basis for retaliatory motive on the part of Mico, Segawa, and MacDonald, he has put no such evidence on the record with respect to Sumner. Accordingly, summary judgment must be granted in favor of defendant Sumner on each of Schroeder's claims against him.

The remaining question is whether defendants Mico, Segawa, and MacDonald are entitled to assert the defense of qualified immunity. The actions of prison officials, like prison regulations, are judged for their reasonable relation to legitimate penological interests. *Frazier*, 922 F.2d at 562 (citing *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)). *See also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir.1989).

■ The standard by which such actions are judged is well established. Under *Turner*, the courts apply a balancing test to determine whether a prison action is reasonably related to a legitimate penological interest. First, the court inquires whether there is a valid, rational connection between the prison action and the asserted government interest. Second, the court determines whether there are alternative means of exercising the rights to which the inmate is entitled. Third, the court should consider the

impact that accommodation of the prisoner's right would have on the prison. Finally, the court should look for the presence of obvious alternatives to the disputed prison action. *Turner*, 482 U.S. at 89–90, 107 S.Ct. at 2261–2262.

■ Thus, in determining whether Mico, Segawa, and MacDonald are entitled to the defense of qualified immunity, the court looks to determine whether the actions alleged on the part of the defendants could be said to violate the standard set forth in *Turner*.

Defendants allege that Schroeder was transferred for several reasons. In addition to relying upon the various misconducts for which Schroeder was cited as a basis for transfer, defendants claim also to have based their decision on Schroeder's difficulty adjusting to the work environment and on the excessive demands that he was placing on the KCF law library. *See Department of Public Safety Individual Evaluation Summary*, Exhibit T to *Defendants' Motion for Summary Judgment*. The defendants concluded that Schroeder's demands were causing the rights of other inmates to be negatively affected.

Schroeder has presented substantial evidence to contradict these contentions. In the Individual Evaluation Summary, signed by Mico and MacDonald, defendants stated *"the impact upon facility programming has not been studied,* although there is a strong possibility that the rights of other inmates may be negatively affected to satisfy Inmate Schroeder's demands." *Id.* Furthermore, Schroeder alleges that the act of transferring him ran counter to established prison policy. This fact, Schroeder says, makes it more probable that defendants' actions were retaliatorily taken rather than for the reasons they allege.

Consequently, on the facts alleged by Schroeder, defendants cannot conclusively show that the act of transferring Schroeder was rationally related to any legitimate penological interest. Because this action would, if done for the reasons Schroeder alleges, violate the constitutional rights of Schroeder, which are clearly established under *Turner*, defendants have failed to make the showing required under *Harlow*. Consequently Mico,

Segawa, and MacDonald are not entitled to invoke the protection of qualified immunity.

Accordingly, summary judgment is granted in favor of all defendants on plaintiff's sixth claim, and additionally in favor of defendant Sumner on plaintiff's fourth and tenth cause of action. Defendants' motion is otherwise denied with respect to these claims.

### 3. *Fifth, seventh, and ninth causes of action*

Schroeder's fifth, seventh, and ninth causes of action present the separate question of whether defendants' actions violated Schroeder's due process rights by acting in contravention of established prison policy.

The Supreme Court noted in *Olim*,

... a liberty interest may be "created" by state laws, prison rules, regulations, or practices. State laws that impose substantive criteria which limit or guide the discretion of officials have been held to create a protected liberty interest. *See, e.g., Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Wright v. Enomoto*, 462 F.Supp. 397 (ND Cal.1976), summarily aff'd, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). By contrast, a liberty interest is not created by a law which "imposes no conditions on [prison officials'] discretionary power," *Montanye [v. Haymes,] supra*, 427 U.S. [236], at 243, 96 S.Ct. [2543], at 2547 [49 L.Ed.2d 466], authorizes prison officials to act "for whatever reason or for no reason at all," *Meachum [v. Fano,] supra*, 427 U.S. [215], at 228, 96 S.Ct. [2532], at 2540 [49 L.Ed.2d 451], or accords officials "unfettered discretion," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981).

The standard by which state laws are reviewed to determine whether they create a protectable liberty interest is now well established. That standard was recently explained by the Ninth Circuit:

First, the [state] law must contain "substantive predicates" governing an official's decision regarding a matter directly related to the individual. [*Kentucky Department of Corrections v. Thompson* [490 U.S. 454, 461,] 109 S.Ct. 1904, 1909[, 104 L.Ed.2d 506] (1989) ]. This means that the law in question must provide more than merely procedure; it must protect some substantive end. The state "may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right." [*Olim* [461 U.S. at 249], 103 S.Ct. at 1748 (footnote omitted) ]. Second the state law must employ "explicitly mandatory language" specifying the outcome that *must* be reached upon a finding that the substantive predicates have been met. [citing *Thompson* [490 U.S. at 462], 109 S.Ct. at 1910]. *Dix v. County of Shasta,* 963 F.2d 1296, 1299 (9th Cir.1992) (original emphasis).

Schroeder contends that defendant violated a liberty interest created by regulations 493.18.01—493.18.03 by transferring him in violation of established policy.

Section 493.18.01 provides in relevant part that:

> Each inmate under the care of the Department of Corrections must be classified for security purposes according to the level of risk he/she represents to the facility and to the community at large. At the same time, it is the Department's policy that each inmate should be classified at the least restrictive capacity consistent with security needs. Thus, an inmate who demonstrates that he/she is capable of assuming the responsibility that a lower classification involves should be given the lower classification. No inmate should receive more supervision or be kept at a more secure status than his/her potential risk dictates.

Section 493.18.01 acts in conjunction with section 493.18.03 to establish a scoring system by which inmates are classified. The custody scoring system awards points to inmates for the severity and frequency of any misconducts, attempted escapes, and institutional violence. A score of less than six points dictates a reduction in custody level. A score of 21 or greater indicates an increase. Schroeder claims, and defendants have not contested that his custody review score was nine points.

Additionally, 493.18.03 provides in part that:

> A custody review may be conducted at regular intervals or after any change in internal or external factors which may offset the inmates security or custody classification levels, i.e. following new sentence(s), sentence reduction, or major (greatest or high) misconduct(s) received, etc.

Thus, Schroeder contends that his custody review was improper since it did not involve any high level misconducts as contemplated by § 493.18.03, and that his reclassification violated the established point system for determining transfers.

As noted above, defendants have not contested Schroeder's factual allegations. Rather, defendants contend that § 493.18 does not create a protectable liberty interest.

Applying the *Dix* test, the court finds that § 493.18 contains clear substantive predicates. The entire scheme established by that system acts to provide guidelines to govern the exercise of discretion by the prison administrators.

Additionally, the court finds that parts of § 493.18 contain mandatory language of the sort required under *Dix* to create a protectable liberty interest. The court finds that Schroeder's claim that defendants violated his Fourteenth Amendment rights by conducting a review at all, in violation of § 493.18.03 is without merit. § 493.18.03 is permissive in its language regarding the conduct of classification reviews. It does not say, for example, that classification reviews "may only" be held under the circumstances described. Rather, it says that the review may be held in the circumstances described, implying that reviews may be held in other circumstances as well.

§ 493.18.01, however, does speak in mandatory terms about how the classification of prisoners should be conducted. It states, for

example, that each inmate *must* be classified according to the level of risk he represents. Further, it says that no inmate should be kept at a more secure status than his potential risk dictates. This provision, acting in conjunction with the language of the classification scoring system, creates a protectable liberty interest that defendants have, as yet, offered no evidence that they did not violate.[1]

Furthermore, defendants Sumner, Segawa, Mico, and MacDonald are not protected by the defense of qualified immunity with respect to their alleged circumvention of the procedure established by § 493.12.02 since the rights of prisoners to have prison administrators follow mandatory prison regulations was clearly established at the time of their action by *Hewitt* and its progeny.

■ The court finds that Schroeder's remaining due process claims to be without merit. § 493.12.02, concerning inmate access to courts, legal services, and legal materials, contains neither substantive predicates nor mandatory language as required under *Dix* to create a protectable liberty interest. Furthermore, Schroeder has not alleged that defendants failed to comply with the procedures set forth within that section.

■ Schroeder's claim based upon § 201–5 of Title 17 is also without merit. § 201–5(8) provides:

> You have the right to participate in counseling, education, vocational training, employment, and other programs as far as resources are available and in keeping with your interests, needs and abilities.

While § 201–5(8) may create a protectable liberty interest, Schroeder has offered no evidence that he has been denied the right to participate in the activities described in that section. Schroeder has only alleged that he was denied participation in employment at KCF. A prisoner has no right under § 201–5(8) to participate in any particular job or program. Consequently, Schroeder's claim based on § 201–5(8) is without merit.

The court grants summary judgment for defendants on Schroeder's fifth and seventh causes of action, but denies defendants' motion with respect to Schroeder's ninth cause of action.

### 4. Second and Third Causes of Action: Law Library Claims

No dispute exists over any factual issue with regard to Schroeder's second and third causes of action. Schroeder contends that the KCF law library was constitutionally inadequate and that Espinas' failure to maintain an adequate library violated his constitutional rights to practice jail house lawyering and was a substantial cause in Mico and Segawa's decision to transfer Schroeder back to Halawa.

■ Schroeder's claims for damages against Espinas are barred by the defense of qualified immunity. A prison inmate has the constitutional right to adequate law libraries or adequate assistance from persons trained in the law so as to provide inmates with sufficient access to legal research materials to prepare *pro se* pleading, appeals, and other legal documents. *Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 855 (quoting *Cepulonis v. Fair,* 732 F.2d 1 (1st Cir.1984)).

■ The law library collection at KCF contains, among others, the following volumes: complete sets of Federal Reporters, Federal Supplements, Pacific Reporters, and Supreme Court Reporters, various Nutshells on criminal procedure, Shepard's Citations, and Federal Practice Digest. *Defendants' Motion for Summary Judgment,* Exhibit B.

The KCF library is substantially similar to the law library found constitutionally adequate by the Ninth Circuit in *Lindquist. Lindquist* 776 F.2d 851 at note 1. As such,

---

1. Defendant's reliance on *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) is misplaced. In *Olim* the Supreme Court found that Rule IV of the Supplementary Rules and Regulations of the Corrections Division of Hawaii, the prior Hawaii regulations for classification of inmates, did not create a protectable liberty interest. That regulation used clear permissive language in granting discretionary power to the prison administrator concerning transfers. The court specifically noted that "the regulations contain[ed] no standards governing the Administrator's exercise of his discretion." *Id.* at 243, 103 S.Ct. at 1744. Here, the regulations at issue created a specific process to be followed in determining transfers.

Espinas' actions in maintaining the KCF library cannot be said to have violated the clearly established constitutional rights of Schroeder. Accordingly, Schroeder's claims against Espinas for actions taken in her individual capacity are barred by the defense of qualified immunity.

Additionally, Schroeder has failed to allege any compensable injury in these causes of action. After his stay at KCF, Schroeder was returned to the Halawa facility. Schroeder has not alleged that the Halawa facility is inadequate, nor has he alleged that his litigation activities suffered any injury as a result of his stay at KCF.

Schroeder's claim that the inadequacy of the KCF library was a substantial cause in his transfer to Halawa is also meritless. Schroeder has established neither that the KCF library was inadequate nor has he offered any evidence that one event had anything to do with the other.

Accordingly, summary judgment in favor of the defendants is appropriate on Schroeder's second and third causes of action.

### 5. *Eleventh cause of action*

Schroeder's final claim is a state cause of action that defendants' actions proximately caused the emotional and mental trauma that Schroeder alleges he suffered as a result of defendants' actions. Because this claim arises out of the same nucleus of operative fact, the court exercises supplemental jurisdiction over this claim. Summary judgment in favor of defendants on Schroeder's eleventh cause of action is inappropriate at this time.

### D. *Schroeder's § 1985 Claims*

The magistrate correctly concluded that Schroeder has failed to make out a valid cause of action under 42 U.S.C. § 1985(3). To make out a valid cause of action under § 1985(3), plaintiff must allege each of the following: a conspiracy, to deprive any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, an act by one of the conspirators in furtherance of the conspiracy, and a personal injury to his person or property or deprivation of any right or privilege of a citizen of the United States. *See, e.g. Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980). Here, Schroeder has failed to allege any facts sufficient to support a conspiracy. Accordingly, summary judgment in favor of defendants on Schroeder's § 1985 claims was appropriate.

### CONCLUSION

For the reasons stated above, the court DENIES plaintiff's appeal from magistrate's order denying plaintiff's motion to defer.

The court DENIES plaintiff's appeal from the magistrate's order granting defendant's motion for protective order and denying plaintiff's motion to compel discovery. However, on the basis of the court's conclusion that defendants are not entitled to the defense of qualified immunity on all counts, the court dissolves that order, and orders defendants to comply with plaintiff's further appropriate and reasonable requests for discovery.

The court GRANTS defendant's motion to correct clerical errors.

The court ADOPTS in part and MODIFIES in part the findings and recommendation of the magistrate judge on defendant's motion for summary judgment.

The court GRANTS summary judgment in favor of defendants on plaintiff's second, third, fifth, sixth, seventh, and eighth causes of action.

The court GRANTS summary judgment in favor of defendant Sumner on plaintiff's fourth and tenth causes of action.

The court DENIES defendant's motion for summary judgment on plaintiff's fourth and tenth causes of action with respect to defendants Segawa, Mico, and MacDonald.

The court DENIES defendant's motion for summary judgment on plaintiff's first, ninth, and eleventh causes of action.

IT IS SO ORDERED.