Gilbert JACKSON, Plaintiff,

v.

O. A. ALLEN, Defendant.

No. LR–70–C–157.

United States District Court,
E. D. Arkansas, W. D.

June 21, 1974.

Clifford E. Jackson, Laser, Sharp, Haley, Young & Boswell, Little Rock, Ark., for plaintiff.

Tom Tanner, Deputy Pros. Atty. Sixth Judicial Dist., Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

EISELE, District Judge.

Plaintiff Gilbert Jackson filed this civil action pursuant to 42 U.S.C.A. § 1983 against O. A. Allen, jailor of the Pulaski County jail, and L. W. Biggs, a deputy jailor. Biggs is now deceased and the suit was not revived against his estate, so O. A. Allen is the only remaining defendant. The complaint alleged that Allen and Biggs, on or about June 18, 1969, had seriously injured Jackson's hand and thereafter denied him access to proper medical treatment.

The Court announced from the bench partial findings of fact in this case, to wit: that plaintiff was injured[1] when repeatedly struck on the hand by the Pulaski County jailor Allen and his deputy, Mr. Biggs, who were seeking to force him to enter what was known as the "hole" in the Pulaski County jail after his refusal to obey their order to so enter, but that plaintiff was not deprived by the defendant of his right to necessary medical care since his injury oc-

curred late in the evening and he was scheduled to be (and was) transported to the State Penitentiary the following day where medical treatment was available. The Court found that damages of $1,500.00 should be awarded to plaintiff if: (1) it was concluded that Jackson had the right under the circumstances to disobey his jailor's order assuming he would, by virtue of obeying it, be subjected to cruel and unusual punishment or to a violation of his due process rights; or, (2) even if he could not legally refuse to obey the order to enter the "hole" under such circumstances, that, nevertheless, the force used to place him in the cell against his will was so excessive as to deprive him of due process or would itself constitute cruel and unusual punishment and thereby violate plaintiff's civil rights.

■ The first question at issue here —does a prisoner have a right to resist the imposition of unconstitutional punishment with physical force or must he submit to such punishment and apply thereafter to the courts for relief—has not been fully answered or analyzed in the cases. After carefully considering the particular facts of this case, and balancing the possible harm to plaintiff against the practical necessity for compliance with the orders of jailors, the Court has concluded that petitioner did not have a right to resist, even passively, entering the "hole" which, according to the testimony, was a small, windowless, unlighted cell containing filth, and which was at a later date declared by this Court to be an unconstitutional form of punishment. Hamilton v. Love, 328 F.Supp. 1182 (D.C.1971). The Court reaches this decision, as indicated, upon the basis of the facts of the case and from a firm conviction that the recognition of an unqualified right to refuse to submit to unconstitutional punishment or to punishment which might, as here, later be found to be unconstitutional (except in limited and ex-

---

1. The major injury to plaintiff's hand was a severely broken finger (bones protuded from his hand) which has resulted in a permanent, though minor, impairment of defend-

ant's ability to use his hand. The Court's findings of fact regarding the injury, its seriousness, and permanence were made from the bench.

treme circumstances as, for example, to protect oneself from immediate, irreparable and permanent physical or mental damage or death) could seriously undermine the discipline of jails and prisons. A contrary decision, the Court believes, would encourage personal, *ad hoc* determinations by prisoners that orders by prison authorities would subject them to unconstitutional punishment thereby leading to wholesale refusals to obey such orders. The potential for confusion, lack of discipline, and actual violence inherent in Court condonation of such on-the-spot judgments by those untrained in the law is clear.

■■ The Court recognizes that the effect of its ruling will be to deny damages to prisoners *resulting from the force applied* by prison officials in obtaining compliance with orders requiring such prisoners to submit to unconstitutional forms and conditions of punishment so long as the force used is reasonable and necessary under the particular circumstances. The Court, however, is not suggesting that such prisoners will not be entitled, again depending on the circumstances, to recover damages for the unconstitutional punishment itself as to which they either voluntarily submit or are involuntarily forced to submit. Their remedy in such cases will be *for the damages resulting from the unconstitutional punishment* and not for damages resulting from the force used to make them submit thereto, again assuming such force is reasonable and necessary under the circumstances. It is important that this distinction be kept clearly in mind when considering such cases. Whether prisoners, inmates or detainees may recover damages as a result of the illegal or unconstitutional punishment endured will, in turn, depend on the existence of such elements as guilty knowledge and bad faith on the part of those personally responsible. It is not necessary here to detail all such elements, it being obvious that each case must be evaluated on its own factual merits.

■ As indicated, exceptions to such a general rule (requiring obeyance to such orders) will have to be developed to cover those extreme circumstances where resistance to submission to unconstitutional punishment is necessary to prevent one's death or immediate, substantial, irreparable and potentially permanent mental or physical damage. While the Court is not here going to attempt to define the precise limits upon the duty of prisoners to obey orders which would subject them to unconstitutional forms of punishment, it believes that the punishment refused must, at the minimum, not only be illegal but also be of such sort and degree as would clearly, and necessarily, lead to such extreme and immediate injury as could not later reasonably be legally remedied.

In this case, the Court realizes that entry into the "hole" would have been odious and repulsive to anyone, and that, in fact, Mr. Jackson was being subjected by the defendants' orders and actions to an unconstitutional form of punishment. However, the Court believes that the fact that Jackson, if he voluntarily complied, would be subjected to such conditions in the "hole" did not justify even his passive resistance, since he has not shown that the damages which he might suffer, or which he in fact suffered by virtue of his brief stay there, were of such a nature that they could not later be adequately remedied by either injunctive or monetary relief. Thus the Court concludes that the jail authorities could properly use reasonably necessary force to make Jackson obey their wrongful order to enter the "hole".

■ Before resolving the question whether the force actually applied was reasonable and necessary or "excessive" under the circumstances, it is important to comment on the question whether the petitioner, under the particular facts and circumstances of this case, might be entitled to damages for having to endure many hours in the "hole". The Court concludes that he would not be so entitled, not only because he seeks damages only for the injuries to his hand (which did not result from his actual detention in the "hole") but also because, as the Court finds from the evidence, the de-

fendant and his deputy, at the time of this incident, believed their order to enter the "hole" was lawful and because they were not aware that the use of the "hole"—which had been a common disciplinary procedure in the jail for years —would constitute an unconstitutional form of punishment. Therefore, the necessary elements of wrongful intent, evil motive and bad faith were not present, and the jailors should, under such circumstances, be protected from liability for damages which might result from the unconstitutional punishment itself.

But this determination that the jailors would not be liable, under the facts of this case, to damages which might have resulted from petitioner's incarceration in the "hole" does not affect the question whether petitioner is entitled to damages resulting from *the force applied to make him submit* to such unconstitutional punishment. The latter question, as indicated, depends upon whether the force used was reasonable and necessary, on the one hand, or excessive, on the other.

■ But even here it must first be determined whether, in this limited area, petitioner's rights under 42 U.S.C.A. § 1983 are the same as, and coextensive with, the common law test of excessiveness. While the defendant and his deputy did have the right to use force to get Jackson into the hole, they had only the right, under common law principles, to use that force which was necessary and reasonable, under the circumstances, to accomplish the objective. Is the test the same under 42 U.S.C.A. § 1983?

Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973), although it does not deal directly with this question, nevertheless provides us with an excellent analysis of the factors which should be considered. There a detainee had been struck twice on the head by a prison official in a spontaneous, unprovoked attack. The district court dismissed the complaint predicated thereon and the detainee appealed. Judge Friendly, in a scholarly opinion, reviewed the history of factually related actions under Section 1983 [2] and noted the appropriate distinction in cases relying on the cruel and unusual punishment provisions of the Eighth Amendment on the one hand and the due process clause on the other.[3] He then states:

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm."

481 F.2d 1028 at 1033. Carefully analyzed, it would appear therefore that the Section 1983 test is the same as the common law test: was the force used reasonable and necessary *under the facts and circumstances of the particular case?*

---

2. Judge Friendly cites Cole v. Smith, 344 F. 2d 721 (8th Cir. 1964), as indicative of the position of this circuit (as opposed to all others having considered the matter) that a situation involving an attack on a prisoner by a state prison official does not state a claim under § 1983 (Johnson v. Glick, *supra*, at 1030). However, this Court believes that the Eighth Circuit position on the scope of § 1983 has changed in recent years, and that the Cole v. Smith case, while not explicitly overruled, is no longer the law in this circuit. I note that Federal Jury Practice and Instruction, co-authored by Chief Judge

Devitt, includes instructions for § 1983 cases which specifically deal with cases such as this one, and, moreover, that a recent case, Agee v. Hickman, 490 F.2d 210 (8th Cir. 1974), while it found that excessive force had not been used, appears to assume that, had the force used been found to have been excessive, an award under § 1983 would have been appropriate.

3. Applying his analysis, *both* provisions would come into play in this case as a result of the Court's factual findings. *See infra.*

■ Analyzing the facts here on the basis of the considerations suggested by Judge Friendly, it is clear that there was a need for the application of force since it was obvious that Jackson was passively resisting entering the "hole". The amount and type of force was, however, clearly beyond that which was needed to accomplish the objective under the circumstances. The Court concludes that the force used here was not applied in a good faith effort to maintain discipline but for the purpose of summarily imposing punishment and harm upon the petitioner for failing to promptly obey defendants' wrongful order to enter the "hole".

Jackson is a relatively small man. He was led down the stairs and through the hall without handcuffs by Jailor Allen and Deputy Biggs. Each officer was considerably larger than Jackson. When the group reached the "hole", Jackson, observing the conditions within, told the defendants that he would not go in and stood in the doorway bracing himself with his feet and holding to the sides of the doorway with his hands. At this point, the defendant and Biggs, rather than seeking to pull Jackson's hands from the door frame and push him through the door, or enlisting the aid of other officers in the jail or available from the Sheriff's office, beat Jackson repeatedly on the hands with their handcuffs, key chains, and other objects inflicting serious and visible injury. This Court believes that, in view of the alternative courses of action available to the jailors (including alternative means of force) and the absence of any threat of a disturbance (no other prisoners were able to view the scene, and only a few were able to hear the commotion), the force actually applied was entirely unreasonable and grossly excessive. As a consequence, petitioner's Eighth Amendment right to be free from cruel and unusual punishment and also his right not to be deprived of his liberty without due process were violated, and the action was therefore properly brought under 42 U.S.C.A. § 1983.

■ The Court is not saying that under no circumstances can a jailor, even to enforce compliance with a wrongful order, take "offensive" forceful action —such as striking a prisoner—as opposed to "defensive" action—such as prying Jackson's hands from the bars or attempting to lift him bodily and place him in the "hole". To the contrary, in a case where there is any imminent threat to persons or property, or where there is an overt challenge to authority which, if not met promptly and directly, could undermine the continuation of necessary prison discipline, then, of course, prompt, forceful, offensive action will usually be warranted, and, even if it results in serious injury, such force may well be found to be reasonable and necessary (and not "excessive") *under those circumstances* and, therefore, not a legal basis for the award of damages for the resulting injuries. However, here, the brutal attack on plaintiff while he was standing passively in the cell door far from the presence of other prisoners cannot, under the then-existing surrounding circumstances, be construed as anything but a flagrant deprivation of his civil rights.

■ Defendant has argued that he should not be required to respond in damages personally even if it is concluded that his actions did constitute a violation of plaintiff's civil rights. He argues that he acted in good faith and in accordance with the "standard operating procedure" of the Pulaski County jail at the time. Several cases supporting that general proposition—that reliance on "good faith" and "standard operating procedures" provides a defense to an action for damages under Section 1983—are cited. The Court would not, and did not, assess damages personally against defendant Allen, and others, for the unconstitutional conditions prevailing at the jail, (Hamilton v. Love, *supra*), recognizing that the conditions, while deplorable, were more or less as they had always been, that the jailors were not constitutional scholars able to predict the future, and, further, that

they lacked resources to correct many of the conditions. However, the Court feels this case differs from *Hamilton* and the cases cited by the defendant in an important respect. Those cases deal with reliance upon "standard operating procedures" in disciplinary actions, jail sanitation and administration, and imposition of solitary confinement. Not one of them says that jailors may rely on their past habits of beating prisoners as a defense to a Section 1983 action.

Judgment will be entered in favor of the plaintiff in the sum of $1,500.00 and for his costs expended. The attorney for petitioner will prepare a precedent judgment accordingly, submit it to opposing counsel for approval as to form, and then submit same to the Court for its consideration.