**Eric SCHROEDER, Plaintiff,**

**v.**

**Tranquillino MABELLOS, Tuiga Sialega, Lee Scruton, Ed Naong, Keith Chavis, Deanna Espinas, Quincy Choy Foo, George Iranon, Defendants.**

Civ. No. 90–00475 HMF.

United States District Court,
D. Hawaii.

June 17, 1993.

Eric Schroeder, pro se.

Susan Barr, Deputy Atty. Gen., Robert Marks, Atty. Gen., Honolulu, HI, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

On April 15, 1993, Plaintiff Eric Schroeder, a pro se prisoner, filed objections to Magistrate Judge Kurren's recommendation that Defendants' Motion for Summary Judgment be granted.[1]

### BACKGROUND

Schroeder, a renowned jailhouse lawyer at the Halawa Medium Security Facility state prison, worked in the law library at the prison. According to Schroeder, his duties included assisting other inmates with their legal problems. Schroeder's assistance allegedly included at least one instance where the law library supervisor asked Schroeder to serve process on the prison warden.

On February 15, 1990, inmate Steven Fisher approached Schroeder in the law library. Fisher told Schroeder that he had been unable to serve a summons and complaint on

---

1. Schroeder's objections were due on April 8, 1993, but Schroeder moved for an enlargement of time which the court hereby GRANTS. See Schroeder's Second Ex Parte Motion to Enlarge Time to File Objections filed April 15, 1993.

Defendant Tranquillino Mabellos, a staff education specialist at the prison. Fisher had named Mabellos as a defendant in a then-pending civil action in this court, *Fisher v. Casey,* Civil No. 89–00813. Schroeder agreed to serve Mabellos.

Mabellos worked in the learning center adjacent to the law library. Schroeder requested and received permission from the law library supervisor to go to the learning center to "give some papers" to Mabellos. (Fisher Decl. at 2.) En route to the learning center, Schroeder again received permission to speak to Mabellos from a guard.

Mabellos gave Schroeder permission to enter Mabellos' office. Schroeder handed the summons to Mabellos and told him that he was being served. Schroeder contends that Mabellos let go of the papers.[2] Schroeder then placed the papers on Mabellos' desk. Mabellos repeatedly ordered Schroeder to retrieve the summons. Schroeder refused and walked away.

The following day, Defendant Deanna Espinas, the prison librarian, suspended Schroeder from his duties in the law library workline. Espinas told inmates that the suspension was to "protect ... good relations with the learning center personnel [even though Schroeder] had not broken any rules." Isom Decl. at 2.) As a result of the suspension from the law library workline, Schroeder lost his 25¢ per hour pay, and access to the law library for legal research.

On February 22, 1990, Mabellos filed a misconduct report against Schroeder. The report charged that:

(1) Schroeder had failed to obey an order in violation of prison rule 17–201–8(11);

(2) that Schroeder's possession of the summons was unauthorized in violation of rule 17–201–8(10); and

(3) that Schroeder had lied to a staff member in violation of rule 17–201–8(15).

Defendants Keith Chavis and Quincy Choy Foo investigated the charges and referred them to the Adjustment Committee.

Defendants Lee Scruton, Ed Naong, and Tuiga Sialega made up the Adjustment Committee. After a hearing, the committee found Schroeder guilty of disobeying Mabellos' order to recall the process but not guilty of the other two charges. The committee ordered Schroeder into disciplinary segregation for fourteen days. After Schroeder completed the segregation period, the prison placed him in the more restrictive module 1 housing unit rather than returning him to module 3.

On June 14, 1990, Schroeder filed this 42 U.S.C. § 1983 complaint. In addition to the above named defendants, Schroeder also named George Iranon, the director of the Department of Corrections. As amended, the complaint states the following causes of action.

Count I alleges that Mabellos retaliated against Schroeder's exercise of his rights of expression and association and his right to assist in civil rights litigation.

Count II alleges that Mabellos violated Schroeder's due process rights by punishing him for a lawful act.

Count III and IV allege that Mabellos, Sialega, Scruton, Naong, Chavis, and Choy Foo conspired to punish Schroeder for exercise of his constitutional rights.

Count V alleges that Mabellos and Espinas conspired to terminate Schroeder's law library position in retaliation for exercising his constitutional rights.

Count VI alleges that Espinas violated Schroeder's constitutional rights of expression and court access by restricting his law library access.

Count VII alleges that Espinas terminated Schroeder from the law library workline in retaliation for exercising his constitutional rights.

Count VIII alleges that Espinas violated Schroeder's due process rights by depriving him of a property interest in his law library position.

Count IX alleges that Iranon is liable as the Director for allowing constitutional violations.

---

**2.** Mabellos denies handling the papers or looking at them.

■ In his findings and recommendations, the magistrate judge recommended granting summary judgment in favor of Defendants on all counts. The court reviews the magistrate judge's findings and recommendation *de novo*. 28 U.S.C. § 636(b)(1)(B); Local Rule 404–2.

## DISCUSSION

### I. *First Amendment Right to Serve Process—Counts I–V, VII, IX*

The pivotal question in this case is whether Schroeder's attempt to serve process on a prison staff member was constitutionally protected. The magistrate judge did not consider the issue. Instead, he noted that the Ninth Circuit in *Benny v. Pipes* expressly reserved the question of whether reasonable time, place, and manner restrictions could be placed on inmate service of process. Findings at 3–4 (citing *Benny v. Pipes*, 799 F.2d 489, 494 n. 6 (9th Cir.1986), *amended*, 807 F.2d 1514 (9th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987)). The Defendants contend that an inmate has no First Amendment right to serve process.

■ Assisting another person in litigation is a form of expression and association protected by the First Amendment to the United States constitution. *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir.1985). A prison inmate retains a right to assist others in litigation. *Id.; Owens v. Rush*, 654 F.2d 1370 (10th Cir.1981); *Adams v. James*, 784 F.2d 1077 (11th Cir.1986). Thus, in *Rizzo*, the court held that an inmate had alleged violation of a protected First Amendment right by alleging that he was

> assisting other inmates with their habeas petitions, that he encouraged and offered to help his fellow students in the vocational course on legal matters, and that he was pursuing legal actions of his own.

*Id.* 778 F.2d at 531.

■ An inmate's right to assist others in litigation may be curtailed, however, when the "institution's officials, in the exercise of their informed discretion, reasonably con-

clude that such associations ... possess the likelihood of disruption of prison order or stability...." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977).

> Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners. *See Procunier v. Martinez*, 416 U.S. 396, 412, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974); *Storseth v. Spellman*, 654 F.2d 1349 (9th Cir.1981). However, the limitation must be no greater than is necessary to protect the particular governmental interest involved. *Procunier v. Martinez, supra*, 416 U.S. at 413, 94 S.Ct. at 1811.

*Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

■ The service of process is an expressive act protected by the First Amendment. In *Benny v. Pipes*, a panel of the Ninth Circuit assumed this to be true without explicitly stating it. *Benny v. Pipes*, 799 F.2d 489, 494 n. 6 (9th Cir.1986), *amended*, 807 F.2d 1514 (9th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). In *Benny*, an inmate in an Arizona prison had personally served process upon two prison guards. The guards crumpled the papers and threw them away. After the district court had entered a default judgment against the guards, they attempted to set it aside by arguing that an inmate could not serve process under state law. *Id.* 799 F.2d at 493–94. Affirming the default judgment, the *Benny* court rejected the argument that state law could prohibit the service of federal process pursuant to Fed.R.Civ.P. 4 in a federal lawsuit. *Id.* The court reserved the question, however, of whether state law "might validly impose reasonable time, place, and manner restrictions on prisoner service of process on prison officials." *Id.* 799 F.2d at 494 n. 6. By noting the applicability of First Amendment "time, place, and manner" analysis,[3] the

---

3. See, e.g., *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753–54, 105

L.Ed.2d 661 (1989), for the application of time,

*Benny* court recognized that the service of process enjoyed First Amendment protections.

Even without the *Benny* decision, the court would conclude that the service of process is protected by the First Amendment. Contrary to the Defendants' argument that service is merely a ministerial act, the service of process has two expressive, communicative functions: "notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit." *Oklahoma Radio Assoc. v. Federal Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir.1992) (citing *Hagmeyer v. United States Dept. of Treasury*, 647 F.Supp. 1300, 1303 (D.D.C. 1986) and 4 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1063). The summoning of a defendant to answer in a federal court is a communication that is an integral part of the judicial system. As such, it is protected by the First Amendment to the United States Constitution.

Although the service of process is protected by the constitution, a prison may still impose narrowly tailored restrictions upon it as necessary for the maintenance of "internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners." *Rizzo*, 778 F.2d at 532. While restrictions may be imposed, it is clear from the *Benny* decision that a complete ban on service of process could not be upheld.[4] These issues are not ready for summary adjudication because neither the Defendants nor Schroeder have addressed them.

## II. *Other Defenses*

The Defendants further argue that summary judgment is appropriate on a number of miscellaneous grounds. The magistrate judge agreed with these arguments as a basis for his recommendation to grant summary judgment. The court considers each in turn.

### A. *Prisoner Disobedience*

Despite any First Amendment considerations, the Defendants argue that summary judgment should be granted because the Defendants responded reasonably to Schroeder's "flagrant and blatant violations of prison rules in the name of engaging in First Amendment activity." (Def.Mot. at 7.) If Schroeder's claim is upheld, Defendants contend, it would undermine prison security by allowing an inmate to refuse to obey an order believed to be unconstitutional.

In support of their argument, Defendants cite *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir.1990), and *Jackson v. Allen*, 376 F.Supp. 1393 (E.D.Ark.1974). The Defendants read *Colon* too broadly. In *Colon*, the court held that prison guidelines on the use of mace to control prisoners did not create a liberty interest. Although the *Colon* court stated that "[i]nmates cannot be permitted to decide which orders they will obey, and when they will obey them," the court did not apply this dicta to forbid consideration of the law-

---

place, and manner analysis to a First Amendment claim.

**4.** The Defendants argue that the United States marshals could have served Mabellos for Fisher because Fisher was proceeding in forma pauperis. 28 U.S.C. § 1915(c); Fed.R.Civ.P. 4(c)(2)(B)(i). Therefore, the Defendants contend, Schroeder had no right to serve Mabellos.

The Defendants are not entitled to summary judgment merely because some alternative existed. Admittedly, the existence of alternate channels of communication is relevant to a First Amendment time, place, and manner analysis. *See, e.g., Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984) (free speech restrictions must leave open "ample alternative channels for communication"). However, the Ninth

Circuit's decision in *Benny* recognized that service by an inmate was still valid despite the possibility of service by the marshals. *Benny v. Pipes*, 799 F.2d 489, 493 n. 4 (9th Cir.1986).

Moreover, assuming the truth of Schroeder's allegations for the purposes of the motion for summary judgment, the availability of process serving by the marshals was not an adequate substitute for personal service by an inmate. In this district, the marshals do not attempt personal service upon a defendant unless mail service is unavailing and the plaintiff successfully moves for a court order for personal service. Schroeder alleges that Fisher's case faced dismissal because the 120 day limit for service of process was about to lapse. Moreover, Fisher did not have a court order authorizing personal service by the marshals. Thus, as alleged by Schroeder, Fisher did not have an "ample alternative channel for communication."

fulness of the underlying order as Defendants propose here.

■ *Jackson* is more supportive of Defendants' position. In *Jackson*, an inmate disobeyed an order to enter a windowless, filthy cell. The cell was later adjudged to be an unconstitutional form of punishment. 376 F.Supp. at 1393–95. The guards beat Jackson until he entered the cell, severely injuring him in the process. The court held that the inmate did not have a "right to resist" going into the cell. An inmate must obey an order to submit to unconstitutional punishment, the court held, "except in limited and extreme circumstances as, for example, to protect oneself from immediate, irreparable and permanent physical or mental damage or death." *Id.* at 1394–95. Thus, the *Jackson* court held that a prison may apply reasonable and necessary force to obtain compliance with an order even if that order is unconstitutional. When an inmate disobeys an order to submit to an unconstitutional punishment, the "remedy in such cases will be for the damages resulting from the unconstitutional punishment and not for damages resulting from the force used to make them submit thereto, again assuming such force is reasonable and necessary under the circumstances." *Id.* at 1395.

■ The court believes that *Jackson* and *Colon* are distinguishable from the case at bar. To begin with, the court notes that *Jackson* and *Colon* involve exigent circumstances. Both of those cases involved the immediate application of physical force to obtain a prisoner's immediate compliance with an order. Inmate disobedience often requires an immediate response in order to maintain security and discipline. Thus, the *Colon* and *Jackson* courts were understandably loath to condemn the immediate response necessitated by disobedience.

■ In contrast, the sanctions imposed on Schroeder were imposed after the fact of his disobedience when no exigent need to force his compliance existed. These sanctions are punitive rather than coercive. When the prison has decided to punish an inmate for failing to obey an order, the lawfulness of the order is a legitimate component of the analy-

sis. *See, e.g., St. Claire v. Cuyler,* 634 F.2d 109 (3d Cir.1980) (analyzing First Amendment concerns when inmate refused to doff religious headwear); *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981) (consideration of whether constitution clearly established a right to wear a beard after inmate refused to shave); *Tucker v. Dickey,* 613 F.Supp. 1124 (W.D.Wis.1985) (inmate's refusal to submit to urinalysis required Fourth Amendment analysis); *Jefferson v. Southworth,* 447 F.Supp. 179 (D.R.I.1978) (prison could not maintain unconstitutional lockup despite inmate disobedience). Thus, in order to show that Schroeder's punishment was justified, the Defendants must justify the legality of Mabellos' order.

### B. *Qualified Immunity*

Defendants further argue that they are protected by qualified immunity.

■ When a defendant asserts qualified immunity, the district court must determine whether, in light of clearly established principles governing the conduct in question, the defendant objectively could have believed that his conduct was lawful. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir. 1993) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

> This standard requires a two-part analysis: 1) Was the law governing the official's conduct clearly established? 2) Under that law, could a reasonable officer have believed the conduct was lawful?

*Id.* Both parts of the analysis are matters of law for the court. However, the existence of factual questions such as whether the defendant knew certain facts may preclude summary judgment. *Id.* 988 F.2d at 873. Once such factual questions are resolved by the trier of fact, however, the court must decide whether the defendant's conduct was reasonable. *Id.*

■ Factual questions as to what was the prison policy on personal service of process prevent summary judgment at this juncture. At the time that the Defendants punished Schroeder for serving process on Mabellos, the decision in *Benny v. Pipes* clearly established that an inmate had a First Amend-

ment right to serve process upon a prison official. 799 F.2d at 494 n. 6. Accordingly, the right to serve process could only be restricted if such restrictions were reasonably related to the maintenance of order, stability, or the legitimate penological objectives of the prison environment. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977); *Rizzo*, 778 F.2d 527 (9th Cir.1985). Because Mabellos' refusal to accept service of process could have been a part of a reasonable prison security policy, the court cannot now decide whether the Defendants acted in accordance with clearly established law.[5]

### C. *"Conspiracy" Claims*

The magistrate judge further recommended that counts III, IV and V be dismissed because they fail to adequately state a claim of conspiracy under 42 U.S.C. § 1985. Schroeder objects to this recommendation, arguing that he used the term "conspiracy" loosely to mean a joint action by the Defendants which subjected them to liability under section 1983.

■ As clarified, Schroeder's claims do state a cognizable claim. If his allegations are true, the Defendants each participated in retaliating against Schroeder for the exercise of his First Amendment rights. Although Schroeder has not met the pleading requirements for section 1985 conspiracy liability, he has sufficiently pleaded a claim under section 1983. Thus, the court DENIES Defendants' motion for summary judgment on counts III, IV, and V.

### D. *Provision of a Hearing on Retaliation Claims*

The magistrate judge further recommended summary judgment for Mabellos on Count II because the Adjustment Committee hearing cured any due process violation arising from the filing of the charges.

■ The filing of retaliatory charges is actionable despite a later hearing on those charges. *Pratt v. Rowland*, 769 F.Supp. 1128, 1134 (N.D.Cal.1991). Therefore, the court will not grant summary judgment on this basis.

### E. *Plausible Chronology for an Inference of Retaliation*

■ The magistrate judge further recommended summary judgment on the grounds that Schroeder had not established a "plausible chronology of events from which retaliation can be inferred." Findings at 4. The magistrate judge does not explain his reasoning here, and the court cannot fathom it. The absence of a plausible chronology occurs when the timing of the cause and the alleged retaliation indisputably shows that there can be no causal connection between the two events. Such is not the case here. Schroeder has alleged that he served process on Mabellos, and that Mabellos retaliated by filing charges against him. Schroeder has further alleged that the refusal to allow inmates to serve process does not advance any legitimate goal of the prison. These are the essential elements of a retaliation claim. *Rizzo*, 778 F.2d at 532. A trier of fact could conclude that Schroeder was punished for serving process without any legitimate penological purpose. Thus, the lack of a plausible chronology is not an appropriate basis for summary judgment.

### F. *Count VI—Denial of Court Access*

■ In count VI, Schroeder alleges that Espinas violated his First Amendment right to court access by suspending him from the law library and by failing to arrange for him to attend the law library after his suspension. Schroeder alleges that while working at the law library, he had enjoyed virtually unlimited access to the law library.

The magistrate judge correctly recommended granting Defendant's motion for summary judgment on this count. The con-

---

**5.** Moreover, even if qualified immunity allowed the Defendants to avoid liability for damages in a personal capacity, Schroeder's action could still continue as an action for injunctive relief against the officials in their official capacities. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (explaining personal and official capacity actions).

stitution does not guarantee access to a law library, but rather access to the courts. Because Schroeder has failed to specifically allege that the denial of library privileges resulted in a lack of access to the courts, the court GRANTS Defendants' motion for summary judgment on count VI.

### G. Count VIII—"Right to Work" Claim Against Espinas

The magistrate judge recommended granting Defendants' motion for summary judgment on Count VIII because there is no constitutionally protected property interest in prisoner employment. Schroeder asserts that protected property interests are created by Title 17 of the Administrative Rules of the Department of Corrections (ARDC), § 17–201–5(a)(8), § 17–204–5, and Department of Corrections Policy and Procedure (P & P) # 493–14–02. In relevant part, these sections provide as follows:

ARDC § 17–201–5 *Rights, Privileges and Responsibilities.* (a) The rights and privileges of all inmates and wards shall be as follows:

.    .    .    .    .

(8) You have the right to participate in counseling, education, vocational training, employment, and other programs as far as resources are available and in keeping with your interests, needs, and abilities.

Amended Complaint, ¶ 62.

ARDC § 17–204–5 *Sentenced Offender Compensation.* (a) Sentenced felons qualifying as cooperative and qualified workers, and contributing to the operation and maintenance of the facility within which they are employed shall receive financial renumeration for their efforts. . . .

*Id.,* ¶ 63.

Department of Corrections P & P 493.-14.02 provides in part that the Department of Corrections' goal is "affording all employable inmates/wards" with work opportunities and "assigning inmates/wards to work in the institution on the basis of their abilities, interests, need, and trustworthiness." (Ex. 4 to Amended Complaint, ¶ 3.0, at 2.) The P & P further provides that:

Committed inmates, qualifying as cooperative and qualified workers and contributing to the operation and maintenance of the facility within which they are employed, shall receive compensation for their efforts.

*Id.,* ¶ 3.1 at 2.

State law may create a protectable property or liberty interest triggering federally enforceable procedural rights. *Dix v. County of Shasta,* 963 F.2d 1296, 1299 (9th Cir.1992) (citing *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989).

To do so, a state law must contain substantive predicates governing an official's decision regarding a matter directly related to the individual. This means that the law in question must provide more than merely procedure; it must protect some substantive end. The state may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice, the State does not create an independent substantive right. Second, the state law must employ explicitly mandatory language specifying the outcome that *must* be reached upon a finding that the substantive predicates have been met.

*Dix,* 963 F.2d at 1299 (internal quotations and citations omitted, emphasis in the original).

The *Dix* court provided the following illustration of the test:

These requirements are perhaps easier to illustrate than to describe in the abstract. A prison regulation requiring that a prison administrator, prior to transferring an inmate, hold an adversary hearing before an impartial tribunal does not give inmates a liberty interest: The regulation does not specify any substantive predicates governing the administrator's or tribunal's decision. A prison regulation providing that an inmate's visitor *"may* be excluded" or *"may* be admitted" if certain substantive predicates are met does not contain sufficiently mandatory language to create a liberty interest. "Visitors *may* be excluded if they fall within one of the described categories, but they need not be. Nor

need visitors fall within one of the described categories, but they need not be. Nor need visitors fall within one of the described categories in order to be excluded." Such a regulation stops short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met and thus does not establish a liberty interest. On the other hand, a prison regulation providing that an inmate "must be allowed to receive visitors" if he exhibits good behavior gives inmates a liberty interest in receiving visitors. Such a law contains a substantive predicate—good behavior—and if the substantive predicate is met, the prison *must* admit the inmate's visitors.

*Dix,* 963 F.2d at 1299 (internal quotations and citations omitted, emphasis in the original).

▮ Applying the *Dix* test, the court finds that the regulations cited by Schroeder establish substantive predicates for the assignment of inmates to work programs. P & P 493.14.02 states that an inmate's "abilities, interests, need, and trustworthiness" are to be considered in assignment for work. Additionally, inmate workers are entitled to compensation if they are "qualified and cooperative." ARDC 17–204–5. Thus, the Defendants are not correct when they argue that the regulations are strictly procedural in nature. There are substantive requirements which govern placement in a work program.

The Defendants also seem to argue that the regulations are inadequately detailed to establish substantive predicates. In support of their position, they cite language that calls for "particularized standards" or "objective and defined criteria." *Baumann v. Arizona Dept. of Corrections,* 754 F.2d 841, 844 (9th Cir.1985) (citing *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) and *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)). However, neither *Baumann* nor the cases it relied upon established how "particular" or "defined" the criteria must be.

The court finds that the regulations before the court are adequately detailed to establish substantive predicates. In reaching this conclusion, the court notes that the *Dix* opinion gave the example of an unadorned "good behavior" requirement as a substantive predicate in a statute. *Dix,* 963 F.2d at 1299 (dicta). A good behavior requirement is no more precise than the requirement that an inmate's "trustworthiness" be considered by an official. Moreover, in *Vitek v. Jones,* the Supreme Court held that a statute requiring a psychologist to find a "mental disease or defect" that "cannot be given proper treatment" in prison was sufficient to establish a liberty interest. 445 U.S. 480, 489, 100 S.Ct. 1254, 1262, 63 L.Ed.2d 552 (1980). Again, the court cannot see any meaningful distinction in the detail of the *Vitek* statute and the regulations before the court.

Moreover, a lack of detailed substantive predicates does not complicate the court's task in evaluating a procedural due process claim. In evaluating a procedural due process claim, the court does not substitute its judgment for the judgment of the initial decision-maker. Rather, the court merely insures that the decision-maker provided a constitutionally-required minimum amount of process. Thus, despite broad or subjective substantive predicates, the court can still evaluate whether the procedure afforded protected the liberty or property interest. Therefore, the court holds that the regulations before the court are adequately detailed and that they establish substantive predicates.

Moreover, the regulations contain mandatory language that meets the second prong of the *Dix* test. ARDC 17–201–5(a)(8) gives an inmate a "right" to employment suited to his abilities, interests, and needs. Additionally, ARDC 17–204–5 provides that a committed inmate *shall* receive compensation for work if he is "qualified and cooperative." Thus, the Defendants did not have "unfettered discretion" to transfer Schroeder from the work program. Rather, they were required to consider his abilities, interests, needs, trustworthiness, qualifications, and cooperativeness.

The court reserves consideration of what procedures are constitutionally required to protect Schroeder's interest as the parties have not briefed the issue. Accordingly, the

court DENIES the motion for summary judgment on count VIII.

### H. *Count IX—Respondeat Superior Liability of Iranon*

The magistrate judge recommended granting summary judgment on count IX because section 1983 does not allow the imposition of vicarious liability through respondeat superior. *King v. Atiyeh,* 814 F.2d 565 (9th Cir. 1986). Schroeder does not contest this, but argues that Count IX should be allowed to survive as a pendent state law claim. *See, e.g., Ismail v. Cohen,* 899 F.2d 183, 187–88 (2d Cir.1990); *Tokuhama v. City & County of Honolulu,* 751 F.Supp. 1385, 1394 (D.Haw. 1989). Although the court has some doubt as to whether Hawaii state law is an independent basis for liability under count IX, the issue was not addressed in Defendants' motion for summary judgment. Accordingly, the court DENIES the motion for summary judgment on count IX.

### III. *Appeal of Discovery Orders*

In an appeal filed March 10, 1993, Schroeder has appealed various discovery orders made by the magistrate judge prior to his recommendation of summary judgment. The rulings made by the magistrate judge were designed to protect the Defendants from unwarranted discovery pending resolution of their summary judgment motion. Because the procedural posture of this action has changed since these rulings, the court REMANDS these issues to the magistrate judge for consideration in light of this opinion.

### CONCLUSION

The court GRANTS the Defendants' motion for summary judgment on Count VI, and DENIES the motion on all other counts.

IT IS SO ORDERED.