29 F.3d 634
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eric SCHROEDER, Plaintiff-Appellee,
v.
Tranquillino MABELLOS; Tuiga Sialega; Lee Scruton; Ed
Naong; Keith Chavis; Deanna Espinas; Quincy
Choy Foo; and George Iranon,
Defendants-Appellants.
 No. 93-16472.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 13, 1994.*
Decided July 19, 1994.
 
 Before: FARRIS, BEEZER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Employees of the Halawa Medium Security Facility in Hawaii appeal the district court's order granting in part and denying in part their motion for summary judgment. Appellants argue that they are entitled to qualified immunity in the civil rights action brought against them by Eric Schroeder, an inmate who alleged that appellants violated his First and Fourteenth Amendment rights by punishing him for serving process on a prison employee. The district court denied appellants' qualified immunity defenses to Schroeder's constitutional claims. Schroeder v. Mabellos, 823 F.Supp. 806 (D.Haw.1993). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We reverse.
 
 
 3
 * An order denying summary judgment generally is not appealable. Baker v. Racansky, 887 F.2d 183, 185 (9th Cir.1989). A district court's denial of qualified immunity, however, conclusively determines that the defendants must proceed to trial and involves a legal issue "conceptually distinct" from the merits of the plaintiff's claim. Velasquez v. Senko, 813 F.2d 1509, 1511 (9th Cir.1987) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The denial of a motion for summary judgment based on qualified immunity is therefore an appealable "final decision" within the meaning of 28 U.S.C. Sec. 1291, notwithstanding the absence of a final judgment. Baker, 887 F.2d at 185.
 
 
 4
 Prison employees who are sued only in their official capacity are entitled to qualified immunity from civil damages so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Baker, 887 F.2d at 186 (quotations omitted). Whether a right is clearly established and whether a reasonable person should have known of the right are questions of law to be determined by the court. Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993). We review de novo the denial of a qualified immunity defense. Id. at 871.
 
 
 5
 Schroeder's complaint stated various civil rights claims for violations of his First and Fourteenth Amendment rights and for retaliation. Because we have jurisdiction over only the denial of appellants' qualified immunity defenses, appellate review is limited to determining (1) whether Schroeder has a First Amendment right to serve process,[1] and (2) whether he has a state-created property interest in library employment.
 
 II
 
 6
 Appellants argue that Schroeder has no First Amendment right to serve process for another inmate. They argue that the district court misconstrued Ninth Circuit case law and that it erred in holding that service of process is a form of expression entitled to constitutional protection. They also argue that Schroeder has no associational right to assist his fellow inmate by serving process on the inmate's behalf.
 
 
 7
 * The district court relied on our decision in Benny v. Pipes, 799 F.2d 489 (9th Cir.1986), cert. denied, 484 U.S. 870 (1987), for the proposition that an inmate has a First Amendment right to serve process on behalf of a fellow inmate. In Benny, we held that the district court had personal jurisdiction over prison guards who were served process by prison inmates. Id. at 494. We held that Fed.R.Civ.P. 4(c)(2), which describes the persons who may serve process, does not exclude prisoners and that service received from prisoners is valid. Id. In a footnote, we explained that Benny did "not present the question whether [a state] might validly impose reasonable time, place, and manner restrictions on prisoner service of process on prison officials." Id. at 494 n. 6. Here, the district court held that the reference in Benny to "time, place and manner restrictions" was a recognition that the First Amendment protects service of process.
 
 
 8
 The district court's construction of Benny is erroneous. Benny involves the interpretation of a federal rule of civil procedure. Our holding was limited to a determination that Rule 4 does not exclude prisoners from the category of persons who may validly serve process. Nowhere in the opinion do we confer constitutional protection on service of process by inmates. The reference to time, place and manner restrictions merely acknowledges the state's authority to restrict prisoner conduct. The opinion does not recognize, even implicitly, a First Amendment right to serve process.
 
 B
 
 9
 Independent of the Benny decision, the district court also concluded that service of process is an expressive act protected by the First Amendment. The court cited two "expressive, communicative functions" of service of process: notifying a defendant of the commencement of an action against him and providing a ritual that marks the court's assertion of jurisdiction over the lawsuit. Based on these functions, the district court held that the act of serving process "is a communication that is an integral part of the judicial system," protected by the Constitution.
 
 
 10
 The act of serving process fulfills a procedural requirement of the judicial system and is a necessary predicate to commencement of a lawsuit. See Fed.R.Civ.P. 4, 5. Service of process "relates to the practice and procedure of the district courts." Hanna v. Plumer, 380 U.S. 460, 464 (1965). Although service of process communicates that a legal proceeding has been instituted, properly understood it has no "expressive" components. The act of handing legal papers to another, moreover, is not in itself an expressive act. At best, it is the contents of the documents that may, under some circumstances, be considered protected speech. It follows that Schroeder's act of serving process was not per se an expression protected by the First Amendment.
 
 C
 
 11
 The district court also relied on our recognition that, pursuant to the First Amendment's protection of freedom of association, a prisoner has a constitutional right to assist other inmates with litigation. Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir.1985). We have not previously set forth the extent to which the Constitution protects prisoner litigation assistance. Although we do not define the parameters here, we hold that, at the time of the events in issue, there was no clearly established First Amendment right to serve process on another inmate's behalf.
 
 
 12
 The Supreme Court first recognized a constitutional right to assist others in litigation in NAACP v. Button, 371 U.S. 415 (1963). In Button, the Court held that lawyers for and members of the NAACP were exercising their First Amendment rights to expression and association by "assisting persons who seek legal redress for infringements of their constitutionally guaranteed and other rights." Id. at 428. The Court considered whether Virginia's ban against "the improper solicitation of any legal or professional business" was unconstitutional as applied to the activities of the NAACP. Id. at 419. The Court reasoned that litigation, in the context of the NAACP's objectives, was a form of political expression. Id. at 429. It held that the ban was unconstitutional, insofar as it chilled NAACP lawyers and members from advising others of their legal rights, undertaking discussion of eventual litigation, or appearing in litigation supported by NAACP funds. Id. at 434. Such activities involve the exercise of First Amendment rights to enforce constitutional rights through litigation, see id. at 440, and are part of the " 'right to engage in association for the advancement of beliefs and ideas.' " Id. at 430 (quotation omitted). See also In re Primus, 436 U.S. 412, 422 (1978) (holding member of ACLU could not be reprimanded for offering free legal assistance when her actions were undertaken to express personal political beliefs and advance the civil-liberties objectives of the ACLU).
 
 
 13
 The litigation assistance activities of the NAACP and the ACLU were protected by the First Amendment because they were politically expressive. Although service of process is part of litigation, it is not an act of expression. Rather, it is "conduct; it is speech plus." See Button, 371 U.S. at 455 (Harlan, J., dissenting).
 
 
 14
 In Rizzo, we held that a prisoner stated a claim for retaliation when he alleged that he was transferred from a penitentiary because of his work as a " 'jailhouse lawyer' assisting other inmates with habeas petitions and other federal actions." Rizzo, 778 F.2d at 529. The assistance lent to fellow inmates by the "jailhouse lawyer" was constitutionally protected because of the prisoner's right to association, and his fellow inmates' right to court access. The constitutional protection arose in large part from the fellow inmates' needs to redress grievances, which would not be met in many instances were it not for the "jailhouse lawyer." See Johnson v. Avery, 393 U.S. 483, 490 (1969) (holding that if states do not provide assistance to inmates in preparation of habeas petitions they may not enforce regulations barring inmates from furnishing such assistance to other prisoners); Kunzelman v. Thompson, 799 F.2d 1172, 1179 (7th Cir.1986) (right to receive assistance from other prisoners conditioned upon showing that inmates did not have adequate access to court without help of fellow inmate).
 
 
 15
 Service of process is not necessarily the type of litigation assistance that significantly advances a prisoner's right to redress grievances, such that prohibiting an inmate from serving process would infringe, in all cases, on his fellow inmate's access to the courts. For instance, a prisoner may use a United States marshal or court appointed officer for service of process. See Fed.R.Civ.P. 4(c)(2). In fact, the inmate on whose behalf Schroeder served process succeeded in obtaining in forma pauperis status and ultimately had a United States marshal serve process on Mabellos. Schroeder's inability to assist his fellow inmate by serving process thus did not infringe on the inmate's access to the courts. We hold that Schroeder did not have a clearly established First Amendment associational or expressive right to serve process on behalf of his fellow inmate. Appellants are entitled to qualified immunity from Schroeder's First Amendment claims.
 
 III
 
 16
 Appellants argue that the district court erred in rejecting their qualified immunity defense to Schroeder's due process claims. They argue that the district court improperly concluded that Schroeder had a state-created liberty or property interest in his job on the prison library workline, from which he was dismissed.
 
 
 17
 The Fourteenth Amendment protects property and liberty interests created by state law. Conner v. Sakai, 15 F.3d 1463, 1466 (9th Cir.1993). To determine whether a state regulation has created a liberty or property interest we examine whether the regulation contains "substantive predicates" that are "particularized standards or criteria" to govern official decisionmaking. Id. We then examine whether the regulation requires, "in 'explicitly mandatory language,' that if the substantive predicates are met, a particular outcome must follow." Id. (quoting Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 461 (1989)).
 
 
 18
 We have recognized that state regulations create liberty and property interests when they provide that something "shall" occur "unless" certain conditions exist. See Baumann v. Arizona Dept. of Corrections, 754 F.2d 841, 844 (9th Cir.1985). When, however, a certain outcome depends on "subtle, predictive judgment, based on subjective appraisal of many elusive considerations," no protected interest is created. Id. at 844 (citing Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 8-10 (1979)).
 
 
 19
 A provision of the Hawaii Department of Correction's policy and procedure manual provides that inmates have "the right to participate in ... employment ... as far as resources are available and in keeping with [their] interests, needs, and abilities." Administrative Rules of the Department of Corrections ("ARDC") Sec. 17-201-5(a)(8). Another regulation provides that sentenced felons "qualifying as cooperative and qualified workers, and contributing to the operation and maintenance of the facility within which they are employed shall receive financial renumeration for their efforts." ARDC Sec. 17-204-5.
 
 
 20
 The provisions that inmates have a "right" to employment and that inmates "shall" receive compensation are "explicitly mandatory." The regulations contain no objective substantive predicates, however, to obtaining and maintaining prison employment. Instead, the "right" to employment is limited by the vague and subjective terms "needs," "interests" and "resources." The regulation does not state that an inmate shall have a job unless he does not meet certain criteria. Rather, job placement is within the discretion of prison officials, who are solely aware of the limits on prison resources. The requirement that prisoners receive financial renumeration for their work, moreover, not only assumes that the prisoners have obtained positions but also is based on the prison employees' subjective appraisal of whether the inmate is "cooperative" and "qualified."
 
 
 21
 The regulations do not create a property or liberty interest in library employment. Appellants are entitled to qualified immunity from Schroeder's due process claims.
 
 
 22
 We find no violation of Schroeder' First and Fourteenth Amendment rights. Because the prison employees are entitled to qualified immunity as to each of Schroeder's constitutional claims, summary judgment should have been granted in their favor.
 
 
 23
 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Appellants argue that Schroeder's disciplinary sanctions resulted from his failure to obey Mabellos' direct order. Because the order was to cease serving process, however, we must consider whether Schroeder may be punished for attempting to serve process. See Conner v. Sakai, 15 F.3d 1463, 1468 n. 8 (9th Cir.1993)