21 F.3d 1111
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Anthony Glen CARR, Plaintiff-Appellant,
v.
Samuel A. LEWIS, Director, ADOC; J.C. Keeney, Assistant
Director of Adult Institutions ADOC; Joe Martinez, Deputy
Warden, South Unit, ADOC; April Robinson, Correctional
Program Supervisor, South Unit, ADOC; Marvin Jump,
Correctional Program Officer, South Unit, ADOC; Clyde
Adair, Correctional Program Officer, South Unit, ADOC; C.W.
Smith, Security Lieutenant, South Unit, ADOC; et al.,
Defendants-Appellees.
 No. 93-16403.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.*
Decided April 12, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Anthony Glen Carr, an Arizona state prisoner, appeals pro se the district court's judgment on the pleadings in favor of defendants in Carr's 42 U.S.C. Sec. 1983 action alleging that defendants violated his Fourth and Fifth Amendment rights by punishing him for refusing to submit to urinalysis drug testing. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 
 3
 * Background
 
 
 4
 In his complaint and opposition to defendants' motion for judgment on the pleadings, Carr alleged that the prison officials' random urinalysis testing constituted an unreasonable search under the Fourth Amendment. He also asserted that his due process rights were violated because (1) the urinalysis tests employed by the prison are unreliable, (2) prison officials refused to allow him to call the test operator as a witness at his disciplinary hearing, (3) he was denied access to literature pertaining to the reliability of the tests employed, (4) he was not afforded a proper disciplinary hearing as defined by Arizona prison regulations, (5) he was sanctioned for refusing to take the urinalysis test even though he had never been ordered to take it, and (6) he was subjected to future criminal prosecution as a result of the test.
 
 II
 Merits
 A. Standard of Review
 
 5
 "A judgment on the pleadings is a decision on the merits and we review it de novo." General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir.1989), cert. denied, 493 U.S. 1079 (1990). A motion for judgment on the pleadings is proper "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir.1989). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." General Conference, 887 F.2d at 230.
 
 B. Standing
 
 6
 Defendants contend that Carr lacks standing to bring a number of his claims. We agree.
 
 
 7
 To establish standing, a plaintiff must demonstrate that (1) a distinct and concrete actual or threatened injury to the plaintiff, (2) traceable to the defendants allegedly illegal conduct, (3) is likely to be redressed by the requested relief. National Wildlife Fed. v. Burford, 871 F.2d 849, 852 (9th Cir.1989); Darring v. Kincheloe, 783 F.2d 874, 876-77 (9th Cir.1986).
 
 
 8
 Carr did not submit to the urinalysis test and, consequently, no evidence was gathered through testing which could be used against him. Thus, Carr lacks standing to bring claims based upon the alleged unreliability of the testing procedure or to bring self-incrimination claims based upon speculation that, in the future, positive test results might be used by prosecutors as evidence against him. See Darring, 783 F.2d at 877 (to establish standing based on threat of prosecution, plaintiff must allege a threat that is credible, not imaginary or speculative).[1]
 
 C. Other Claims
 
 9
 Carr does have standing to challenge defendants conduct based on the Fourth Amendment's prohibition against unreasonable searches because he suffered adverse consequences as a result of refusing to take the test. See Jackson v. Gates, 975 F.2d 648, 653 (9th Cir.1992) (firing of public employee after his refusal to submit to urinalysis sufficient to maintain Fourth Amendment challenge to test because of adverse consequences resulting from the refusal), cert. denied, 113 S.Ct. 2996 (1993). Carr also has standing to seek redress for alleged constitutional violations arising from his disciplinary hearing.
 
 
 10
 Carr alleged that defendants violated his Fourth Amendment right to be free from unreasonable searches and seizures when they attempted to subject him to the urinalysis test. This contention lacks merit.
 
 
 11
 A urinalysis test is a search for purposes of the Fourth Amendment and therefore must be conducted in a reasonable manner. Skinner v. Railway Labor Executives Ass'n, 489 U.S. 602, 617-19 (1989). Reasonableness in the context of prison administration requires "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." Bell v. Wolfish, 441 U.S. 520, 560 (1979).[2] Moreover, prison administrators are accorded "wide-ranging deference in [their] adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547.
 
 
 12
 The unauthorized use of narcotics in a prison by inmates poses a serious threat to prison officials' ability to maintain institutional security. See id. at 559. Consequently, prison officials have a significant and legitimate interest in preventing unauthorized drug use among prison inmates. Id. at 560. Random urine collection and testing of prisoners is a reasonable means of combating the unauthorized use of narcotics. Accordingly, defendants did not violate Carr's Fourth Amendment rights by requiring him to submit to a urinalysis test. See Skinner, 489 U.S. at 617-619.
 
 
 13
 Carr also alleged in his pleadings that the prison's testing selection methods are not necessarily random and therefore may be used by prison officials for harassment purposes.
 
 
 14
 Inmates are protected under the eighth amendment from searches that are performed solely for "calculated harassment." See Hudson v. Palmer, 468 U.S. 517, 530 (1984); Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir.1989). Carr failed to allege, however, that the defendants' requested Carr to take the test solely for calculated harassment purposes. Moreover, Carr failed to allege that he was selected by any method other than the random selection method referred to by defendants. Given these circumstances, the district court properly found that the testing methods employed by the defendants were not performed for harassment purposes and therefore did not violate Carr's constitutional rights. See Hudson, 468 U.S. at 530; Vigliotto, 873 F.2d at 1203.
 
 D. Due Process Claims
 
 15
 1. Right to Call Witnesses at a Disciplinary Hearing
 
 
 16
 Carr contends that defendants denied him due process at his disciplinary hearing by denying his request to call as a witness the technician who performs the urinalysis test. This contention lacks merit.
 
 
 17
 An inmate does not have an unrestricted right to present evidence or to have all the witnesses he requests called at his disciplinary hearing. Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Prison officials have the discretion to keep the hearing within reasonable time limits. Id.
 
 
 18
 Here, prison policies require that the operator's checklist and the urinalysis printout be forwarded to the inmate. We agree with the district court that the "operator's presence at the disciplinary hearing is redundant when inmates are already provided with the operator's checklist." Moreover, as the district court noted, allowing prisoners to cross-examine the test operator at every disciplinary proceeding involving urinalysis testing could result in the preclusion of a speedy and efficient disciplinary process. Given these circumstances, Carr's interest in calling the test operator as a witness was outweighed by the institution's interest in order and discipline. Accordingly, the defendants did not violate Carr's right to due process by prohibiting him from calling the test operator as a witness at his disciplinary hearing. See id. at 566.
 
 2. Access to ADx Test Literature
 
 19
 Carr contends that defendants denied him due process by not allowing him access to materials concerning the reliability of the ADx testing method. This contention lacks merit.
 
 
 20
 Here, given the inherent reliability of the ADx testing method, the fact that inmates are provided with an operator's checklist after each test, and the prison's discretion in executing its penological interests, the district court did not err by finding that the defendants' failure to provide Carr with literature pertaining to the reliability of the ADx test did not violate Carr's right to due process. See Koenig v. Vannelli, 971 F.2d 422, 422 n. 1 (9th Cir.1992) (per curiam) (recognizing that ADx test, when properly performed, is generally accurate).
 
 3. Liberty Interest
 
 21
 Carr next contends that his due process rights were violated when prison officials failed to follow procedural guidelines providing for the presence of three staff members at his disciplinary hearing. This contention lacks merit.
 
 
 22
 "[A] liberty interest may arise from the Due Process clause or be created by state law." Smith v. Noonan, 992 F.2d 987, 989 (9th Cir.1993). Although the federal Constitution does not support Carr's alleged liberty interest in having a three-member panel at a disciplinary hearing, state law may establish a liberty interest "if it places substantive limitations on the exercise of official discretion," id., thereby triggering federally enforceable procedural rights, Dix v. County of Shasta, 963 F.2d 1296, 1299 (9th Cir.1992) (citing Kentucky Dep't. of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). State statutes that combine mandatory language, such as "shall" and "must," with substantive predicates to create a protected liberty interest. Hewitt v. Helms, 459 U.S. 460, 471-72 (1983). A provision that merely raises " 'procedural requirements, even if mandatory, do[es] not raise a constitutionally cognizable liberty interest.' " Smith, 992 F.2d at 989 (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1098 (9th Cir.1986), cert. denied, 481 U.S. 1069 (1987)).
 
 
 23
 Here, the regulation at issue does not contain substantive predicates or mandatory language requiring any specific outcome when a hearing is conducted. See Hewitt, 459 U.S. at 471-72. Thus, because the state prison policy on disciplinary hearings raises only procedural requirements that do not create a liberty interest, the defendants' failure to provide a three-member panel at Carr's disciplinary hearing did not violate Carr's constitutional rights. See Smith, 992 F.2d at 989.
 
 4. Direct Order
 
 24
 Carr contends that he was never directly ordered to submit to a urinalysis test, and therefore he should not have been disciplined for refusing to take it. This contention lacks merit.
 
 
 25
 In the context of prison disciplinary proceedings, the requirements of due process are satisfied if there is "some evidence" to support the findings of the prison disciplinary board. Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir.1989) (citations omitted). The relevant inquiry is " 'whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.' " Id. at 1270 (quoting Superintendent v. Hill, 472 U.S. 445, 455-56 (1989)).
 
 
 26
 Carr alleged that defendant Cook told him "I need you to give me a U/A." When Carr inquired as to why he was being asked to provide a urine sample, Cook responded that he had been randomly selected. Given these circumstances, we agree with the district court that the factual allegations constitute "some evidence" that defendant Cook had given Carr a direct order. See Bostic, 884 F.2d at 1269-70.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Here, the district court erred in ruling on the merits of these claims. Nevertheless, we may affirm on any basis in the record. See New Kids on the Block v. New America Publishing, Inc., 971 F.2d 302, 305 (9th Cir.1992)
 
 
 [2]
 We reject Carr's contention that the district court erroneously relied on Bell, as opposed to Turner v. Safley, 482 U.S. 78 (1987), in reaching its conclusion